## WERCKMEISTER v. PIERCE & BUSHNELL MANUF'G CO.

### (Circuit Court, D. Massachusetts. August 7, 1894.)

### No. 3,149.

1. PAINTING—INTERNATIONAL COPYRIGHT—PROTECTION AGAINST INFRINGEMENT.
    The provisions of Act March 3, 1891, c. 565, § 3 (26 Stat. 1107), as to copyrighting a painting, are independent of those in regard to copyrighted photographs, and infringement of the copyright of a painting may be enjoined without regard to whether complainant had taken steps entitling him to import photographs of it.

2. SAME—EXTENT OF PROTECTION.
    A valid copyright of a German painting gives protection against any reproduction of it, as by photographs.

3. SAME—WHO MAY COPYRIGHT—"ASSIGNS."
    Under Act March 3, 1891, c. 565, § 1 (26 Stat. 1107), providing that the author or proprietor of any painting "and the assigns of any such person," shall, on compliance with the copyright provisions, have the sole liberty of publishing, one to whom a German artist gives the exclusive right of reproduction and publication is entitled to copyright, he being within the term "assigns."

4. SAME—NOTICE—INSCRIBING COPY.
    Under Act July 8, 1870, c. 230, § 97 (Rev. St. 4962), denying one the right to sue for infringement of his copyright unless he give notice thereof by inserting in the several copies of every edition published, on the

title page or the page immediately following, if it be a book, or, if a map. chart, photograph, painting, etc., by inscribing on some portion of the face or front thereof the words, "Entered according to act of congress," etc., the words should not be inscribed on a copyrighted painting, but on the photograph or other publications thereof.

Suit by Emil Werckmeister against the Pierce & Bushnell Manufacturing Company for infringement of a copyrighted painting. Decree for complainant.

Goepel & Raegener, for complainant.

Alex. P. Browne, for defendant.

PUTNAM, Circuit Judge. On or about October 1, 1891, G. Naujok, a German subject, and a resident of Germany, painted in oils a picture, called by him, and in this case, "Die Heilige Cäcilie," an undoubtedly meritorious work of art. On the 5th of the succeeding March he executed, in behalf of the complainant in this case, who describes himself in his bill as a citizen of the empire of Germany, and who transacts his business under the name of the "Photographische Gesellschaft," an instrument of which the following is a copy:

"I transfer hereby to the Photographische Gesellschaft, in Berlin, for my work, 'Die Heilige Cäcilie,' the right of publication,—by which I wish to have understood the exclusive right of reproduction,—against a payment of 500 marks, and nine gratuitous copies thereof.
"Königsburg, in Prussia, March 5, 1892.                    Gustav Naujok."

The artist never painted a replica. In the summer of 1892 he sent the picture to Munich, to the Grosse Internationale Kunstausstellung, where it was sold to some person unknown to the artist, and not shown in this case; and neither the artist nor either of the parties to this case know where the picture is, or where it has been since the sale. From January, 1892, until March, 1892, the picture was publicly exhibited at Berlin in the Kunsthandlung von Schulte, a public art gallery, the rules of which as to suffering copies to be taken are not shown. No other publications are proven, except the photographs of the parties to this case. On the 16th of May, 1892, complainant delivered at the office of the librarian of congress a copy of the title of the painting, and a description of it, and obtained the following certificate:

"Library of Congress, Copyright Office, Washington.

"To wit: Be it remembered, that on the 16th day of May, anno domini 1892, Photographische Gesellschaft, of Berlin, Ger., have deposited in this Office the title of a Painting, the title or description of which is in the following words, to wit:
DIE HEILIGE CACILIE.
G. Naujok.
Photo. & Descrip. on file;
the right whereof they claim as proprietors in conformity with the laws of the United States respecting Copyrights.
"A. R. Spofford, Librarian of Congress."

Afterwards, on or about the 15th of September, 1892, complainant put on the market in Germany a photograph of the painting, and subsequently imported, or caused to be imported, the same photo-

graph, and has sold it, or caused it to be sold, in the United States. Subsequently the defendant sold in the United States a photograph, which is an undoubted infringement, if, under the law, there can be an infringement; and the bill is brought to restrain the defendant, touching its photograph, and for other relief.

The photograph of the complainant bears the inscription, "Copyright, 1892, by Photographische Gesellschaft," and reproduces from the picture the signature of the artist; but it contains no notice, unless implied in the foregoing words, that the painting itself was ever copyrighted, nor has there been inscribed on the painting, or its mounting, the notice pointed out by section 4962 of the Revised Statutes. By the proclamation of the president of April 15, 1892 (27 Stat. 1021), the benefit of the international copyright act of March 3, 1891, c. 565 (26 Stat. 1106), was extended to German subjects. The act of 1891 (section 3) provides that the two copies of a copyrighted photograph required to be delivered at the office of the librarian of congress shall be printed from negatives made within the limits of the United States, or from transfers made therefrom; and that during the existence of the copyright the importation into the United States of the photographs copyrighted, or any edition or editions thereof, or any negatives, shall be prohibited. Consequently the complainant's imported photographs cannot be directly protected by statute. As they are not copyrighted, and are, therefore, perhaps, not prohibited from importation, it is claimed that, if his positions in this case are sound, the policy of the provisions of the third section, to which we have referred, may be partially defeated. These provisions, however, are apparently precise, in that they are limited to the cases of "book, chromo, lithograph, or photograph." Littleton v. Oliver Ditson Co. (decided by this court August 1, 1894) 62 Fed. 597. They do not assume to reach any reproduction which does not involve depositing with the librarian of congress two copies; and the case at bar does not fall within the latter class, but within the class requiring one photograph of the subject-matter of copyright. Therefore we are apparently not met by any broad policy, such as would trouble us in reaching a result not fairly excluded by the letter of the statute. But, as the right of the complainant to enjoin the defendant does not depend on the right of the former to import photographs, we need not particularly investigate the effect of these statute provisions. At the common law, the artist or the owner of the painting can prohibit reproductions of it until he in some way publishes it; but, after publishing it, either by photographs or otherwise, it becomes subject to the same rules as other published matter, and the public becomes entitled to it. This principle is so fundamental that it need not be elaborated, or fortified by any citation of authorities, and we will only refer on this point to Parton v. Prang, 3 Cliff. 537, 548, 549, Fed. Cas. No. 10,784. Moreover, a mere exhibition of a picture in a public gallery, like that at Berlin, does not, at common law, forfeit the control of it by the artist or the owner, unless the rules of the gallery provide for copying, of which there is no evidence in this case. But if, by proper authority, which it does not lie in the mouth of the complain-

ant in this case to deny, photographs of this painting have been put on the market in the United States, under such circumstances that they are not protected by the copyright statutes, the public is free to copy it, and to sell copies of it in the legitimate course of trade, and the bill cannot be maintained.

The propositions of the complainant necessary to maintain his case are that, by virtue of the agreement given him by the artist, which we have already set out, he was entitled to copyright the painting itself, and that he has lawfully done so; and that, the painting being copyrighted, all reproductions of it in every form are infringements. While he admits that he is neither the author nor the proprietor of the painting, yet he claims, by virtue of the instrument given him by Naujok, to come in under the words "assigns of any such person," found in section 4952 of the Revised Statutes. In response to the complainant's claim, the defendant, among other things, refers to section 4962 of the Revised Statutes, and asserts that, even if the complainant's position was correct in other respects, he could maintain no action for any infringement of his copyright, because the words specified in the section last referred to have not been inscribed on any visible portion of the original painting, or on the substance on which the painting is or may have been mounted.

Neither party has cited to the court any decided cases nor referred us to any other authorities, bearing directly on the principal questions involved. Yuengling v. Schile, 12 Fed. 97, has been brought to our attention, as leading up to the proposition that the proprietor of a painting, merely as such, has no right to a copyright thereon. We do not understand that such is a proper inference from that case, or that the statute law is to that effect. We have no occasion to make any issue touching any questions which were actually decided in that case. Our attention is also called to Schumacher v. Schwencke, 30 Fed. 690; but this case, so far as it applies to the case at bar, is only in harmony with Gambart v. Ball, 14 C. B. (N. S.) 306; Rossiter v. Hall, 5 Blatchf. 362, Fed. Cas. No. 12,082; and Ex parte Beal, L. R. 3 Q. B. 387, 394,—to the effect that the person holding the copyright of an original painting is protected against any reproduction of it, whether by a photograph of it, by a reproduction of an authorized photograph, or in any other manner. The decisions of the English courts are of but little assistance, because their statute touching copyrights of original paintings (25 & 26 Vict. c. 68) makes special provisions with reference to the right to a copyright impliedly passing with the picture itself; and also the general copyright act now in force (5 & 6 Vict. c. 45) contains, in section 2, a definition of the word "assigns," and, in section 25, provisions about the nature of the estate in copyrights, not found in the statutes which govern us. Some English cases will, however, be referred to, which relate incidentally to the determination of this case.

Returning to the principal propositions at issue, they divide themselves into three: First, whether the complainant had a lawful right to copyright the original picture; second, whether, if the copyright is valid, it carries with it protection against all reproductions

of it, including the photographs of the defendant; and, third, whether the omission to inscribe on the original painting, or its mounting, either of the expressions required by the copyright statutes, and already referred to, bars this action. If either of these propositions is determined against the complainant, we, of course, need go no further. We have no doubt that the law is correctly laid down in the cases to which we have referred,—that the author or proprietor of a painting, who properly copyrights it, is protected against all reproductions of it in any form. This proposition is so fundamentally essential to the policy of the copyright statutes that it needs no elaboration; and it follows logically that, if the complainant in this case, who received from the artist the exclusive right of reproducing the painting, became thereby entitled to a copyright, his copyright protects him as fully as the artist would have been protected if he had reserved his right of reproduction, and taken the copyright himself. Therefore, on the second proposition at issue, we are clearly with the complainant. It is to be observed that the instrument given by Naujok to the complainant contained no expression of any authority to copyright, in the name either of Naujok or the complainant; but this is of no consequence if the complainant's contention is correct that he is covered by the words "assigns of any such person," already cited. In accordance with that contention, the complainant registered the copyright in his own name, and on his own right, and not in the name of Naujok, nor on the assumption of any agency coming from Naujok, either revocable or otherwise. It is also to be noticed that the case runs clear of the difficulties which would arise from the word "sole" in section 4952 of the Revised Statutes, if the right vested in the complainant by Naujok had not been exclusive, even as against Naujok himself. At the common law the right to control the publication of a painting follows the title to the painting. It vests in the artist so long as he retains the painting; but when it is sold by him, if sold without any qualification, limitation, or restriction, all the incidents of the painting, including that of controlling its publication, vest in the purchaser. This is in strict harmony with the law touching the incidents of property, and flows necessarily out of it. We hardly need to cite authorities to sustain this proposition, but refer again in this connection to Parton v. Prang, 3 Cliff. 537, 550, 551, Fed. Cas. No. 10,784. The English copyright statute (25 & 26 Vict. c. 68), which created the law authorizing copyrighting of paintings (Fishburn v. Hollingshead [1891] 2 Ch. 371, 379), and which is still in force, contains regulations touching this matter, enabling the artist, when disposing of his painting, to retain or dispose of the right to reproduce it. But nothing of this nature is found in our statutes, and the question arises, therefore, how far their general terms are intended to vary from the practice of the common law referred to. Is there or is there not enough in them to overcome the presumption that 'the statutes do not change the common law, except so far as the intention to do so is apparent? In the absence of something showing an intention to vary the common-law rule, it must be presumed to

stand. We do not mean by this that at common law the owner of a painting might not empower some other person than himself to elect as to publication, or that he might not dispose of the painting, reserving to himself the right of such election; but we mean to say, that, inasmuch as at the common law this right is presumably in the proprietor of the painting, it requires something more than general expressions in a statute to satisfy the court of an intention to vest the privilege of securing a copyright in any other person than the one in whom it presumably exists. Moreover, the word "assigns," on which the complainant relies, is ordinarily construed as only indicating the nature of the estate, and its ordinary effect is only to the extent of declaring that whatever is obtained is of an assignable character. Strictly, an authority to assign, or an assignment, relates to what already exists, and has no pertinency to the creation of a right out of another right, —as by the instrument given by Naujok to the complainant. Such instruments are ordinarily spoken of as "licenses," and not "assignments," and the holders of them as "licensees" and not "assigns." This is the common rule under the statutes touching patents, although they contain a system so much more elaborated than those touching copyrights that it is not safe to reason too liberally from one to the other. Instruments of this class relating to patents are ordinarily regarded as strictly in gross. Oliver v. Chemical Works, 109 U. S. 75, 82, 3 Sup. Ct. 61. But the instrument in this case is so strongly expressed that it must be construed as vesting in the complainant all the right of publication which Naujok had, or ever could have, and therefore as vesting a full estate, which would pass by succession, and also be assignable. The instrument, having been executed in Germany, where the technical rules of the common law touching the particular phraseology required to create more than a life estate or a personal interest do not exist, is especially free from doubt on this score. It cannot be questioned that all the right which Naujok had to publish or reproduce passed out of him, and, as it was in him assignable and descendible, it follows necessarily that the same qualities attach to it as vested in the complainant. It is for this, with other reasons, that, as we have already stated, no embarrassment arises in this case from the word "sole" in section 4952 of the Revised Statutes.

Following out the same line touching the distinction between transferring interests already existing and creating new ones, and between assignments and licenses, it is stated in Copinger on the Law of Copyright (3d Ed. p. 449) that it has been decided that a document conveying the sole right to reproduce a picture in chromos, or in any other form of color painting, for the term of two years, was not an assignment, and therefore did not need to be registered; but the learned author questions this decision. In Lucas v. Cooke, 13 Ch. Div. 872, Mr. Justice Fry—of especially large experience and ability in cases of this character—used, with reference to an instrument of this nature, the words "assignment" and "license" interchangeably; and, on the whole, it involves no vio-

lent presumption to maintain that section 4952 of the Revised Statutes, in its use of the word "assigns," had no reference to its narrow, technical meaning to which we have referred. The English statute, 25 & 26 Vict. c. 68, already referred to, in designating the persons who may copyright an original painting, uses only the word "author," and the words "and his assigns." The word "proprietor" occurs at various points in the English copyright acts, but not in this connection; and the same may be said as to the copyright statutes of the United States prior to the act of July 8, 1870, c. 230, § 86 (16 Stat. 212). The provisions of the statute last named were re-enacted by section 4952 of the Revised Statutes, and further re-enacted, so far as this point is concerned, by the first section of the international copyright act of March 3, 1891, c. 565 (26 Stat. 1107). As there found, it provides, in terms, that the "author * * * or proprietor of any * * * painting * * * and the assigns of any such person shall, upon complying with the provisions of this chapter. have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending." The phraseology of the statute 25 & 26 Vict. c. 68, might not require going beyond the ordinary implications of the common law, or beyond holding that the word "assigns" contemplated any one except the purchaser of the painting itself. But section 4952 of the Revised Statutes, as re-enacted in the international copyright act. in addition to the word "author," uses the word "proprietor;" and this latter word extends to paintings as well as to the other matters designated in the section. By the word "author" and the word "proprietor" our statute exhausts everything which the English statute necessarily covers by the word "author" and the words "or his assigns;" and, if nothing more was contemplated than is provided by the English statute, the word "proprietor," or the word "assigns" in our statute—one or the other of them—would be necessarily surplusage, and of no effect. The language of our statute is not only explicit in including "author." "proprietor." and "assigns." but is rendered even more so by the use in the same connection of the words, "upon complying with the provisions of this chapter." These demonstrate that the assigns, equally with the author or proprietor, may register and complete the copyright.

Applying the ordinary rules of construction, the court must ascertain, if it can, why, after using the word "proprietor," our statute also uses the word "assigns." Certainly this requirement cannot be met if the word "assigns" is limited to its ordinary technical meaning, already referred to, or to the holder of the original painting; because all this is covered by the word "proprietor." We therefore cannot escape the conclusion that the statute requires us to broaden out the class of persons authorized to take out a copyright, so as to include others than mere proprietors of the paintings themselves, having regard always, of course, to the word "sole," which the section contains. and to which we have already referred. We are unable to perceive the force of all these words, unless the statute covers cases of the precise character of this at bar. What

the complainant claims has been accomplished in this case could clearly have been accomplished by first registering a copyright or copyrights with various nationalities by Naujok, or in his name, and by his then assigning them absolutely and without reservation to the complainant. The result, under those circumstances, would have been precisely the same as the result which the complainant now maintains; and certainly a construction of a statute which avoids this circumlocution cannot be unjust or against good sense. On the whole, we think the complainant rightfully and effectually registered the copyright, as maintained by him.

So far the history of the legislation in the United States has not been of much assistance to the court, but on the remaining proposition it proves to be of great value. The defendant claims that section 4962 of the Revised Statutes is to be read literally, and that, being thus read, it requires the notice to be inscribed on the painting itself, or at least on the mounting of it. If the defendant is right in this literal reading, it follows that the statute is satisfied by inscribing the notice on the original painting, or its mounting, and that all reproductions thereof, whether in engravings, photographs, or other forms, go free from the notice. The supreme court has said, what must be patent to every one, that the object of the statute in this particular is to give notice of the copyright to the public. Lithographic Co. v. Sarony, 111 U. S. 53, 55, 4 Sup. Ct. 279. The purpose of the statute, therefore, would wholly fail of accomplishment by inscribing notice on the painting only, which presumably passes into some private collection, entirely out of the view of the general public. This is so patent that it need not be enlarged upon, and would be enough of itself to persuade the courts very urgently to look, if necessary, beyond the mere letter of the statute. Moreover, the same clause of section 4962 on which the defendant relies groups paintings with engravings, photographs, chromos, and various other articles, which need not be specified; and, if the defendant's construction properly applies to paintings, it would seem to follow that it applies to all the other articles named in the same clause, and that the notice, therefore, should be inscribed on some original or quasi original engraving, photograph, or chromo, and not on the copies thereof which go out to the public. But the practice as to such articles is distinctly the other way, and its correctness was expressly recognized in the decision of the supreme court last cited, in which the court said that the notice is to be given by placing it "upon each copy." Thus, in a single sentence, the supreme court has torn down the structure of apparent literalness on which the defendant relies.

An examination of the history of the legislation out of which section 4962 developed makes the result entirely clear. The first statute requiring the inscription of a notice was that of April 29, 1802, c. 36 (2 Stat. 171). At that time the province of the copyright laws was narrow, and was divided in that statute into two fields. Section 1 provided that the copy of the record of registration required by law to be published in one or more newspapers should be in-

serted on the title-page, or the page immediately following it, of every book, but that in the case of a map or chart certain abbreviated phraseology, pointed out by the statute, should be impressed "on the face thereof." Section 2 extended the copyright privilege to historical and other prints, and required that the same entry impressed on the face of maps and charts should be engraved on the plate, with the name of the proprietor, and printed on every print. Under this statute it was clear that the notice prescribed should go out to the public on every copy protected by the statute, and evidently the engraving of it on the engraver's plate was only to make sure that the main purpose of the statute was accomplished.

The next statute is the act which so long stood as the copyright code of the United States,—that of February 3, 1831, c. 16 (4 Stat. 436). The provisions of that act touching the question now under examination we reproduce here at length:

"Sec. 5. And be it further enacted, that no person shall be entitled to the benefit of this act, unless he shall give information of copyright being secured, by causing to be inserted, in the several copies of each and every edition published during the term secured on the title-page, or the page immediately following, if it be a book, or, if a map, chart, musical composition, print, cut, or engraving, by causing to be impressed on the face thereof, or if a volume of maps, charts, music, or engravings, upon the title or frontispiece thereof, the following words, viz: 'Entered according to act of congress, in the year    , by A. B., in the clerk's office of the district court of    ,' (as the case may be)."

This statute somewhat extended the scope of the copyright privilege, but left the provision on this point entirely clear. A distinction was made by section 5 between a book on one hand, and a "map, chart, musical composition, print, cut, or engraving" on the other; but it was only as to the precise place on which the notice should be inscribed,—in the one case on the title-page, or the page immediately following it; and in the other on the face, with a provision that, in cases of volumes of maps, charts, music, or engravings, it should be on the title-page or frontispiece. Except as to the mere place of impressing the notice, the statute applied without discrimination to all articles within the scope of the copyright privilege, and looked for the inscription of the notice on every copy which went out to the public, and nowhere else. The words, "the several copies of each and every edition," ran through and governed every part of the section. This is so clear that it needs nothing to be added to the statement of the fact.

The next act was that of August 18, 1856, c. 169 (11 Stat. 138), which contained nothing to be noticed in this connection. Next came the act of March 3, 1865, c. 126 (13 Stat. 540). This is important, because it first extended the copyright privilege to photographs, and provided that this extension should inure to the benefit of the authors of photographs "upon the same conditions as to the authors of prints and engravings." In other words, when photographs first came into the copyright statutes, they came in under the clear provisions of the fifth section of the act of 1831, requiring the inscription of the notice to be on every copy going out to the

public, and nowhere else. That was the law when the Revised Code of July 8, 1870, c. 230 (16 Stat. 198), was adopted. The provision we are looking for is found in section 97 of that act. This statute first extended the copyright privilege to paintings, statues, statuary, models, and designs, and section 97 was a consequent attempt to cover the additional articles by condensation of phraseology. It was afterwards incorporated into section 4962 of the Revised Statutes, on which the defendant rests. To this time there had been no indication of any policy except that which the supreme court, in the citation we have made, had said was necessary to give the public notice of the copyright privilege claimed,— a policy which we have already seen expressly included photographs, maps, and charts as well as books. In this attempted condensation, maps, charts, and photographs were dislocated from the express provision touching books, and associated with paintings, statues, statuary, models, and designs. As no reason can be suggested for any change touching maps, charts, and photographs, the presumption is that congress intended, notwithstanding the awkward phraseology used, that the law should continue the same as to them; and, if this presumption stands, it carries with it the same law for paintings as for maps, charts, and photographs. Logan v. U. S., 144 U. S. 263, 302, 12 Sup. Ct. 617. The whole section was as follows:

"Sec. 97. And be it further enacted, that no person shall maintain an action for the infringement of his copyright unless he shall give notice thereof by inserting in the several copies of every edition published. on the title-page or the page immediately following, if it be a book; or if a map, chart, musical composition, print, cut, engraving, photograph, painting, drawing, chromo, statue, statuary, or model or design intended to be perfected and completed as a work of the fine arts, by inscribing upon some portion of the face or front thereof, or on the face of the substance on which the same shall be mounted, the following words, viz: 'Entered according to act of congress, in the year ——, by A. B., in the office of the librarian of congress, at Washington.' "

The words, "several copies of every edition published," may well be held to permeate and govern that portion of the section commencing with the words "if a map, chart," etc., as effectively as it does the words "if it be a book," and the section may well be construed precisely the same as if the words "if it be a book" preceded the words "on the title-page." The word "thereof," in the latter part of the section, may well be held to refer back to the words "the several copies," in its early part. For clearness, we give the section as thus rearranged:

"That no person shall maintain an action for the infringement of his copyright, unless he shall give notice thereof by inserting in the several copies of every edition published, if it be a book, on the title-page or the page immediately following, or if a map, chart, * * * painting, * * * by inscribing upon some portion of the face or front thereof * * *."

Under the circumstances, the breaking up and dislocation of the section into sentences or phrases should be held to have been merely for the purpose of indicating the place where the notice is to be inscribed, according to the subject-matter of the publication,—

that is to say, on the title page, or on the page immediately following, if it be a book, but, if it be other matter, on the face, or front; and it should be further held that in all other particulars the directions of the statute are identical with reference to each article to which the subject-matter relates. A rearrangement of clauses or parts of sentences is justifiable under the most common circumstances, and is especially justifiable in order that the statute may not be read contrary to its plain purpose and the general public policy. A careful comparison of this section of the act of 1870 with the corresponding section of the act of 1831 shows that there are no other differences, except those of detail, required by the extension of the copyright code, nor any which can affect the proposition we are considering. This provision of law, as we have already said, was re-enacted without substantial change in section 4962 of the Revised Statutes. It was again re-enacted in the act of June 18, 1874, c. 301 (18 Stat. 78). The only differences are the option of the shorter form of notice contained in the latter statute, and a broadening out of the provision touching the portions of the published article on which the notice may be inscribed. No other purpose in the last enactment was suggested in Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731, in which it is somewhat referred to.

The only remaining act to be considered is that of August 1, 1882, c. 366 (22 Stat. 181). The main purpose of this statute was to make sure of the accomplishment of one general purpose of the act of 1874. The latter required that the notice be inscribed on some visible portion of the published articles, while the act of 1882 expressly permitted it, under some circumstances, to go on the back or bottom of such articles, although in some senses the back or bottom might not always be visible portions thereof. The reading of the act of August 1, 1882, contains, however, a legislative construction of the prior statutes on the point which we are considering. The prior statutes included designs in the same class with maps, charts, photographs, and paintings. Therefore if, with reference to paintings, the inscription is to go on the painting itself, it would follow, as a matter of course, that, with reference to models and designs, under section 4962 of the Revised Statutes, it should appear on the original models and designs, and not on the articles put on the market constructed according to them. But the act of 1882 says in terms that the manufacturers of designs of molded decorative articles may put the mark prescribed by statute, not on the designs, but "upon the back or bottom of such articles." As the clear purpose of this statute related entirely to the place where, on any particular article, notice might be inscribed, and it clearly was not in any way intended to change the law as to what the inscription shall be impressed on. the effect of this phraseology cannot be mistaken. On the whole, while we must admit that the phraseology of the statute is unfortunate, and might have been more clearly and positively expressed, we are convinced that, as we have already said, the differences in the various phrases relate entirely to the place on which the notice is to be inscribed, according to the subject-matter of the article published, and that,

with that exception, the phrases apply alike to all classes of articles, and relate entirely to the notices to be inscribed on what goes to the public in various forms and editions, and that there is no requirement that any shall be inscribed on the painting itself, more than there is that there shall be an original or quasi original map, chart, musical composition, print, cut, engraving, photograph, drawing, chromo, or model or design, to be inscribed with the notice, as the defendant claims the painting in this case should have been inscribed.

The defendant also claims that the words inscribed on the photograph, namely, "Copyright, 1892, by Photographische Gesellschaft," give no notice that the painting has been copyrighted, and imply only that the photograph has been. If this is so, the fault is that of the statute, and not of the complainant, as he has used exactly the phraseology imposed by law. Undoubtedly the statute, if it had not been so condensed, might have given a form of notice more in harmony with the facts of cases of this character; but we can see that in this notice there is enough to give any one who is looking for the truth, and who desires to avoid infringement, the thread which will lead him easily to the actual condition of the copyright. There is something in the form of this notice which tends to sustain the contention of the defendant that it should have been inscribed on the painting itself, but not enough to overcome the force of the rules of construction which have led us to the result we have explained. We perceive nothing further in the case which requires any observations from the court.

Decree for the complainant.