WERCKMEISTER v. AMERICAN LITHOGRAPHIC CO. et al.

(Circuit Court, S. D. New York. December 16, 1905.)

1. COPYRIGHTS—CONSTRUCTION OF STATUTE.

The intention of the copyright laws, as declared by the Constitution, being "to promote the progress of science and useful arts," they should be liberally construed to carry out such intention.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 1.]

2. SAME—PAINTING—COPYRIGHT BY "ASSIGN" OF AUTHOR.

Under Rev. St. § 4952, as amended by Act March 3, 1891, c. 565, 26 Stat. 1106 [U. S. Comp. St. 1901, p. 3406], which authorizes the copyrighting of a painting by the author or proprietor, or by the "assigns of any such person," the assignee of the copyright of a painting may obtain a statutory copyright upon it in the United States, although not the owner of the painting itself; the common-law copyright being capable of assignment separately from the painting, and such person being within the term "assigns," as used in the statute.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 22.]

3. SAME—NOTICE OF COPYRIGHT.

Act June 18, 1874, c. 301, 18 Stat. 78 [U. S. Comp. St. 1901, p. 3411], which requires notice of copyright to be given by inserting the same "in the several copies of every edition published, on the title page or on the page immediately following, if it be a book, or if a map, * * * painting, * * * statuary or model or design, * * * by inscribing upon some visible portion thereof, or of the substance on which the same shall be mounted, * * *" does not require such notice to be inscribed upon the original painting or statuary copyrighted, but only on the "several copies" of the same; and a copyright of a painting is not invalidated by the fact that such notice is not inscribed on the original painting.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 29.]

In Equity. On final hearing.

Briesen & Knauth (Antonio Knauth, of counsel), for complainant.
Wetmore & Jenner (William A. Jenner and Oscar W. Jeffery, of counsel), for defendants.

HOLT, District Judge. This suit is brought to restrain the infringement of a copyright. Emil Werckmeister, the complainant, is an art dealer, doing business in Berlin, Germany, under the style of "Photographische Gesellschaft," and in New York under the style of the "Berlin Photographic Company." W. Dendy Sadler, a British subject, is an artist, who, prior to April 2, 1894, painted a picture named "Chorus," representing a convivial group of gentlemen gathered about a punch bowl, holding pipes and filled glasses in their hands, and singing in chorus. In January, 1894, Mr. Werckmeister called upon Mr. Sadler at his studio in London. The picture was then nearly, but not entirely, finished. It was thereupon agreed between them that Mr. Sadler would sell to Mr. Werckmeister the copyright of the painting for £200; that the painting should be sent to Mr. Werckmeister at Berlin to be photographed, and returned to Mr. Sadler in time for him to exhibit it at the annual exhibition of the Royal Academy in 1894. This agreement was thereafter confirmed by the execution and delivery of the following instrument:

"I hereby transfer the copyright in my picture 'Chorus' to the Photographische Gesellschaft, Berlin [the Berlin Photographic Company] for the sum of £200.
"London, April 2, 1894.
"[Signed]                                        W. Dendy Sadler."

The painting was sent to the Photographische Gesellschaft, at Berlin, where it was received March 8, 1894. Photographic reproductions of it were made at Berlin, and the painting was returned to Mr. Sadler in London on March 22, 1894. Mr. Sadler exhibited the picture at the exhibition of the Royal Academy in 1894, and it remained on exhibition from the first Monday of May until the first Monday of October. While the painting was on exhibition at the Royal Academy an entry was made by Mr. Sadler, in a book kept at the Academy for the purpose, stating that the picture was for sale, but with the copyright reserved. Mr. Sadler continued to be the owner of the picture until 1899, when he sold it, reserving the copyright, to Mr. Cotterell, residing in London, who still owns it. A by-law of the Royal Academy provides that no permission to copy the works, during the terms of exhibition, shall on any account be granted. There has never been inscribed upon the painting, or upon the substance upon which it is mounted, any statement showing that the painting was copyrighted. On March 31, 1894, the complainant sent to his New York house, to be transmitted to the Librarian of Congress, an application for copyright of the painting, in due form, accompanied by a description and photograph of it. This application was received at the copyright office, at the Congressional Library in Washington, on April 16, 1894. Subsequently the complainant published and sold copies of the painting made by the photogravure process, each of which was marked, "Copyright, 1894, by Photographische Gesellschaft." It is stipulated that the defendant the American Lithographic Company has printed for the defendant the American Tobacco Company a large number of chromo-lithographs, which are substantial copies of Mr. Sadler's picture, upon the background of which, how-

ever, is added an advertisement of a certain kind of tobacco, and that the defendant the American Tobacco Company caused said chromo to be publicly exhibited as advertisements, within one year before the commencement of this suit, and within the jurisdiction of this court, and without the permission of the complainant.

An application was made in this case for a preliminary injunction, which was denied by Judge Thomas ([C. C.] 117 Fed. 360), on the ground that the public exhibition of the picture at the Royal Academy between May and October, 1894, without any notice of copyright being placed on or about the painting, was a publication. A plea was afterwards filed to the bill, alleging the said exhibition as a bar to the suit. It was so held by Judge Wheeler ([C. C.] 126 Fed. 244); but upon appeal the Circuit Court of Appeals reversed this decision, on the ground, in substance, that the by-law of the Royal Academy, prohibiting any copying of the pictures there exhibited, prevented the exhibition of the picture from being such a general publication has barred the right to copyright. 134 Fed. 321, 68 L. R. A. 591. The defendants subsequently interposed an answer, proofs have been taken, and the case now comes before the court for final hearing upon the answer. No claim is made by the defendants' counsel that, if Mr. Werckmeister had the right to take out the copyright, any formal proceedings necessary for that purpose have been omitted, or that, if he had a copyright, the defendants have not infringed. The defense relied on is that Mr. Werckmeister could not take out a copyright under the United States statute, because he did not own the painting, and that the copyright is invalid, because the painting never had affixed to it any notice that it was copyrighted.

The opinions of Judge Thomas, Judge Wheeler, and Judge Townsend which have been delivered in this case contain so full a discussion of the principles and authorities applicable to the law of copyright that any further general discussion of them here is unnecessary. The question whether the exhibition of this painting in the Royal Academy was a publication which invalidated the copyright was concluded in this case by the decision of the Circuit Court of Appeals. The only questions now open in this case are whether a person not the owner of a painting can obtain a copyright on it, and whether the omission to affix to the painting a notice of the copyright invalidated it.

The question whether the United States statutes permit a statutory copyright upon a painting to be obtained in this country by a person who does not own the painting is one upon which there is little direct authority. It is certainly a question of importance. I concur with the defendants' counsel that it is to be determined by the language of the statute. The thing transferred by Mr. Sadler to Mr. Werckmeister was the copyright, by which he meant whatever common-law copyright Mr. Sadler had and whatever statutory copyright Mr. Werckmeister might be enabled to obtain in any of the countries in the world. It might well be that the laws of some countries would enable him to obtain a copyright, and of others not. The simple question in this case is whether the laws of the United States permitted him to do so. The statute upon which the question depends is as follows:

"The author, inventor, designer, or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph or negative thereof, or of a painting, drawing, chromo, statue, statuary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators, or assigns of any such person, shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same; and, in the case of a dramatic composition, of publicly performing or representing it, or causing it to be performed or represented by others; and authors or their assigns shall have exclusive right to dramatize or translate any of their works, for which copyright shall have been obtained under the laws of the United States." U. S. Rev. St. § 4952, as amended by Act March 3, 1891, c. 565, 26 Stat. 1106 [U. S. Comp. St. 1901, p. 3406].

The substantial question, in construing this statute, is whether Mr. Werckmeister is included in the term "assigns." The author of a painting, when it is finished, before publication, owns a material piece of personal property, consisting of the canvas and the paint upon it. He also owns an incorporeal right connected with it; that is, the right to make a copy of it. These two kinds of property, although growing out of the same intellectual production, are in their nature essentially and inherently distinct. The law has always recognized that they are distinct. The defendants' counsel admitted on the argument that, after a copyright has been once taken out, the two kinds of property are distinct, and that the owner of a painting may then sell the painting to one person, and the copyright to another. The claim is that that cannot be done before the statutory copyright is taken out. But the law has always recognized that a common-law copyright, before a general publication, is a distinct property from the thing to which the copyright applies. One man may be the owner of the thing, and another of the copyright in the thing. For instance, a person who has received a letter, voluntarily sent him by the writer, owns the piece of paper upon which the letter is written; but the writer of the letter continues to be the owner of the copyright, and can, by injunction, prevent the person who has received the letter from publishing it. Pope v. Curl, 2 Atk. 342; Thompson v. Stanhope, Ambl. 737; Folsom v. Marsh, 2 Story, 113, Fed. Cas. No. 4,901; Woolsey v. Judd, 4 Duer, 379; Drone on Copyright, p. 133. A teacher delivering lectures orally to students remains the owner of the copyright, although he has permitted the particular persons hearing the lectures for their own instruction to take copies of them. Abernethy v. Hutchinson, 1 Hall & Tw. 40; Caird v. Sime, 12 App. Cases, 326; Bartlett v. Crittenden, 5 McLean, 32 Fed. Cas. No. 1,076. A person who has transferred the ownership of a copy of a book to another, under an agreement that it shall be transferred only for a particular and restricted purpose, does not thereby part with the copyright. Duke of Queensbury v. Shebbeare, 2 Eden, 329; Thompson v. Stanhope, Ambl. 737; Bartlett v. Crittenden, 5 McLean, 32, Fed. Cas. No. 1,076; Southey v. Sherwood, 2 Meriv. 436; Drone on Copyright, p. 103. A public representation of a play does not authorize a person who hears it to make a copy of it. Macklin v. Richardson, Ambl. 694; Palmer v. De Witt, 47 N. Y. 532, 7 Am. Rep. 480; Crows v. Aiken, 2 Biss. 208, Fed. Cas. No. 3,441. It therefore does not necesssarily follow that the word

"assigns," as used in this statute, means an assignee both of the thing copyrighted and of the copyright, or of either separately. An author owns two distinct species of property. He could admittedly assign them both, and it is not perceived why he cannot assign either without assigning the other. The statute does not say what the "assigns" shall be the assignee of. It is the "assigns of any such person"— that is, of an author; but what the thing assigned shall be the statute does not state. But when a person has two kinds of property which, in their nature, are inherently distinct, and which the law treats, for certain purposes, as being distinct, presumably he has a right to assign either of such kinds of property separately from the other; and I do not find anything in this statute which necessarily confines the meaning of the word "assigns" to a person to whom a thing copyrighted has been transferred, excluding a person to whom the copyright has been transferred. It is said that the expression that the author or his assigns shall have the sole liberty, among other things, of "completing, executing and finishing the same" indicates that the term "assigns" must be confined to the thing copyrighted. The argument is that Mr. Werckmeister could not complete, execute, and finish Mr. Sadler's painting unless he had the painting. The fact is that Mr. Werckmeister probably could not properly complete, execute or finish Mr. Sadler's painting, if he had it. I think that these terms refer to those things mentioned as the subject of copyright which any ordinary person, without special expert skill, could execute, complete, and finish. The construction of this statute contended for by the defendant would, in many cases, considerably restrict the value of a copyright. In this case, Mr. Sadler sold his picture for £300 and his copyright for £200. He might have found it difficult to find a purchaser who would wish to buy both the picture and the copyright. If every art dealer engaged in the business of selling copies of paintings should be obliged to purchase the paintings before he could obtain a copyright on them, it might impose a heavy burden upon the business, and, on the other hand, a purchaser of a painting, like Mr. Cotterell, who desires it for the purpose simply of hanging it in his dining room as an ornament in his house, would, in many cases, not be willing to pay the author the additional amount which the copyright would be worth. The object of the copyright law is beneficent. It was intended, in the language of the Constitution, "to promote the progress of science and useful arts," and, in my opinion, the copyright laws should be liberally construed to carry out the intention of the Constitution.

The only case that has been brought to my attention in which the question is directly considered is the case of Werckmeister v. Pierce & Bushnell Mfg. Co. (C. C.) 63 Fed. 445. In that case a German artist, Naujok, painted a picture, and subsequently, by written instrument, transferred to Mr. Werckmeister "the right of publication, by which I wish to have understood, the exclusive right of reproduction." Mr. Werckmeister never owned the painting. The artist subsequently sold it to another person. There was no evidence that it ever had upon it any notice of copyright. Werckmeister, the complainant, took

out a copyright upon the picture in this country, and brought out and sold photographs of the painting, which bore the proper copyright inscription. The claim was made in that case that Werckmeister did not come under the word "assigns," in section 4952 of the revised statutes, and therefore could not take out a valid copyright. The question is elaborately considered by Judge Putnam, and he decided that Werckmeister could take out such copyright. The question was also involved in that case whether the copyright was void because no notice of the copyright was placed on the painting. Judge Putnam held that the omission of such notice on the painting did not invalidate the copyright, and rendered judgment for the complainant. This judgment was reversed by the Circuit Court of Appeals in an opinion in which Judges Colt and Nelson concurred, and from which Judge Webb dissented. 72 Fed. 54, 18 C. C. A. 431. The ground of the reversal stated in Judge Colt's opinion is, in substance, that the copyright was void because no notice of copyright had been placed upon the painting. The opinion expressly states that the court does not pass upon the other questions raised by the assignment of errors, one of which was that the court erred in finding that the copyright was effectually registered by the complainant in his own name. This case, therefore, seems to me a direct authority in favor of the proposition that an assignee of the common-law copyright of a painting, who does not own the painting, can take out a valid statutory copyright under the United States statute. Judge Putnam's opinion contains a full discussion of the question, with which I entirely concur.

The other defense in this case is based upon the fact that no notice of copyright was attached to the painting. The determination of this question, also, depends simply upon the construction of the United States statute. The language of the statute upon this subject is as follows:

"Sec. 4962. That no person shall maintain an action for the infringement of his copyright unless he shall give notice thereof by inserting in the several copies of every edition published, on the title page or the page immediately following, if it be a book, or if a map, chart, musical composition, print, cut, engraving, photograph, painting, drawing, chromo, statue, statuary, or model or design intended to be perfected and completed as a work of the fine arts, by inscribing upon some visible portion thereof, or of the substance on which the same shall be mounted, the following words, viz.: 'Entered according to act of Congress, in the year ——, by A. B., in the office of the Librarian of Congress, at Washington'; or, at his option, the word 'Copyright,' together with the year the copyright was entered, and the name of the party by whom it was taken out; thus 'Copyright, 18——, by A. B.'" [U. S. Comp. St. 1901, p. 3411].

This statute is not clearly expressed. It has been, in some cases, construed as meaning that, in the case of a painting, the notice must be inscribed upon some visible portion of the painting, or of the substance upon which the same shall be mounted. But, in my opinion, this is not the true construction of the language. I think that, in the provision of this section prescribing that notice of the copyright shall be inscribed "upon some visible portion thereof, or of the substance on which the same shall be mounted," the word "thereof" and the words "the same" do not refer to the words "map, chart," etc., imme-

diately preceding, but refer back to "the several copies," either of every edition of a book, or of a map and the other things mentioned in the statute, including a painting. There can be no object in placing the notice of copyright upon the thing copyrighted, which the public rarely or never sees, and omitting it from the copies which are distributed to the public. In the case of a book, the notice is not placed upon the original manuscript, but is placed upon each copy printed. In the case of a map, it is not placed upon the original drawing of the map, or upon the engraved plate from which the copies of the map are reproduced. There would be no object attained by placing the copyright notice on the manuscript of a book, and not upon the printed copies of it, or upon the engraved plate of a map, chart, musical composition, print, cut, or engraving, or the negative of a photograph, or a painting or drawing, or the plate of a chromo, or a statue; and all authorities admit that the notice must be put on each copy. Undoubtedly, an original painting or statue is more often exhibited to the public than the other originals from which copies are made, but the persons who see an original painting or statue are usually few in number, compared with those who see photographs or pictures of it. It is, in my opinion, just as correct to construe the words "thereof" and "the same" as referring back to the words "the several copies," as to have them refer to the list of things, other than books, which immediately precede them; and I think that the reason for the construction which makes the copyright act provide that the notice provided for by it should be put upon the copies of the thing copyrighted, instead of upon the thing itself, is so weighty, that such a construction should be given to the statute.

This question was directly involved in the case of Werckmeister v. Pierce & Bushnell Mfg. Co. (C. C.) 63 Fed. 445, previously referred to. In that case, Judge Putnam held that the omission to put the copyright notice on the painting did not invalidate the copyright. The judgment was reversed by the Circuit Court of Appeals for the First Circuit, on the ground that the court below erred in so holding. Pierce & Bushnell Mfg. Co. v. Werckmeister, 72 Fed. 54, 18 C. C. A. 431. In that decision Judges Colt and Nelson concurred, and Judge Webb dissented. With the highest respect for the distinguished judges who concurred in the reversal of the judgment, I am not able to agree with their conclusions, but do concur with the view of Judge Putnam and Judge Webb, as stated in Judge Putnam's opinion. The basis of the decision of the majority in the Circuit Court of Appeals is substantially stated in the following extract from the opinion:

"Section 4962 does not deal with 'copies' as distinct from 'originals,' or with 'originals' as distinct from 'copies,' as those terms are commonly understood; but it deals with published copyrighted things, and it declares that no action for infringement will lie unless each copyrighted thing which is published or made public, be it a 'copy,' so called, or an 'original,' so called, or another edition or reproduction of such copy or original, has inscribed upon it the notice of copyright."

In other words, as I understand this opinion, the view on which it is based is that every form in which any production of the intellect is delineated, so that it can be observed by another, is a copy, and

142 F.—53

that there is no distinction, under the copyright act, between the first form in which the author places it, and copies of the first form subsequently made. But in the first place I cannot perceive how any such construction of the section is grammatically permissible. The words "thereof" and "the same," it seems to me, must refer either to the words "map, chart, painting," etc., immediately preceding them, or to the words "the several copies," in the beginning of the section, and cannot grammatically refer to both. Every one admits that the notice must be put on the copies. The only question is whether it must be put on the original. In the second place, I cannot perceive any reason for annexing such a notice to the first form to which the author reduces his production. The author of a book, or a painting, or any other intellectual production, knows whether he has a copyright in it or not. The purpose of requiring notice of copyright to be put upon copies made is to charge the person owning such copies with knowledge that his ownership is restricted. A person owning a thing ordinarily has a right to copy it, as an incident of his absolute dominion over it; but, if the thing has been patented or copyrighted, he has not such absolute ownership. But, if a person purchases a patented or copyrighted thing, justice requires that he should have notice of the existence of the patent or copyright, in order to prevent him from becoming innocently involved in the penalties prescribed for the violation of such right. It is, therefore, obviously just and appropriate that notice of the copyright should be put on each copy issued; but I can perceive no reason for putting such a notice on the original. It is possible, of course, that in the case of a sale of a painting, the copyright of which has been previously sold, the purchaser might suppose that he purchased, with the painting, the copyright. Whether such a person would have a just cause of complaint may properly be left to be decided when it arises; but the possibility of injustice in such a case is true of any person who purchases any original form from which copies are ordinarily made. It has been held that the purchaser at an execution sale of an engraved plate from which copyrighted maps were printed did not, by purchasing such plate, obtain the right to publish and sell the maps. Stephens v. Cady, 14 How. 528, 14 L. Ed. 528; Stevens v. Gladding, 17 How. 447, 15 L. Ed. 155. Moreover, I do not understand it to be claimed by any one that such notice must be put on the original in any case except the case of a painting or a statue. I never heard it suggested that it was essential to the validity of the copyright of a book that the notice of copyright be placed upon the original manuscript, or upon the type or plates from which the book is printed, or, in the case of a copyright of an engraving or etching or lithograph or other picture printed from a prepared plate, that it be placed upon the drawing from which the plate is made, or upon the plate itself; or, in the case of a photograph, that it be affixed to the negative. Moreover, the requirement, in the case of paintings or statues, is one which would be so distasteful to many artists and purchasers that it seems to me improbable that Congress should have intended to require it. Most artists, and many purchasers, I think,

would object to having a notice of copyright affixed to a beautiful painting or statue. Many persons would regard it as a serious blemish, particularly foreigners, by whom the object of the requirement would not be understood. It would seem almost a deliberate vulgarization of art if the finest specimens of painting and sculpture exhibited in the Paris Salon, the London Royal Academy, or the leading art societies in this or other countries, were all ticketed with copyright notices. I cannot see why the law should require it, or that it does require it.

My conclusion is that there should be a decree for the complainant for the relief demanded in the bill, with costs.