## Case No. 10,784.

### PARTON v. PRANG.

[3 Cliff. 537; 2 O. G. 619; 6 Am. Law T. Rep. 105; 7 Am. Law Rev. 357.] [1]

Circuit Court, D. Massachusetts.   Oct. 8, 1872.

COPYRIGHT — PICTURES — "PAINTING" — "MANUSCRIPT"—LITERARY PROPERTY—SALE—COMMUNICATION OF CONTENTS—LIMITATIONS AS TO USE.

1. The word manuscript in section 9 of the copyright act [4 Stat. 438] does not include a picture, and the purchaser of a painting may acquire a title to the same by an oral contract with the lawful owner: the difference between "manuscript" and "painting" defined.

2. The consent of the author or proprietor in writing, signed in the presence of two credible witnesses, was not necessary under that act to obtain the right to reproduce, or chromo, a picture, provided such consent was fairly and understandingly obtained and for a valuable consideration.

3. At common law the sole proprietorship of a manuscript is in the author or his assigns before publication, but an unqualified publication, such as is made by printing and offering copies for sale, dedicates the contents to the public, unless the sole right of printing, reprinting, publishing, and vending the same is secured by copyright.

[Cited in Yuengling v. Schile, 12 Fed. 106; Henry Bill Pub. Co. v. Smythe, 27 Fed. 923; Werckmeister v. Pierce & Bushnell Manuf'g Co., 63 Fed. 447.]

4. In communicating the contents of his manuscript, the author may prescribe limitations and impose such restrictions as he pleases upon the extent of its use.

[Cited in Werckmeister v. Springer Lith. Co., 63 Fed. 811.]

This was a bill in equity to restrain the respondent from publishing and selling chromo lithographic copies of a painting, representing a view on Claverack creek, Columbia county, in the state of New York, executed by the complainant and praying for an account. [Arthur] Parton alleged that he was an artist earning his living by designing, composing, and painting landscapes and other pictures, and selling the same; that he designed from nature and executed the picture of rural scenery described in the bill of complaint, that having so designed and composed the same, he executed a large copy thereof in oils and sold the same, that he did not give or sell to the purchaser the right to copy, print, engrave, lithograph, chromo, or reproduce the picture in any way, or to publish the same in any form; that the respondent [Louis Prang] is a lithographer and publisher of chromos so called, that he made or caused to be made a chromo of the picture, and marked or engraved on the face of the chromo, the words and figures: "Arthur Parton, 1869, chromo, lithographed, and published by L. Prang & Co. Entered according to act of congress in the office of the librarian of congress"; that he was informed and believed that the respondent had caused an

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. 6 Am. Law T. Rep. 105. and 7 Am. Law Rev. 357, contain only partial reports.]

entry of copyright to be made of said chromo under the title "Close of Day" and that he claimed the sole right to copy, print, and publish said picture and chromo thereof under said pretended entry of copyright. Wherefore he prayed for an account and for an injunction. Service was made and the respondent appeared and filed answer. Respondent admitted that the complainant was an artist, that he excuted the picture of rural scenery and made a copy thereof in oils as alleged, that the complainant sold the picture to the person named in the bill, but he expressly denied that he sold it to that person for his private collection. He also admitted that he, the respondent, was a lithographer and publisher of chromos, and that he made or caused to be made a chromo of said picture and marked or engraved upon the face of the chromo, the words and figures alleged in the bill, and that he caused an entry of copyright to be made of the chromo, and that he claimed the sole right to copy, print, and publish the said chromo; that to the time of the sale mentioned in the bill, the complainant retained possession of the picture; that the picture to that time had been on public exhibition and exposed to the public for sale in his studio in the city of New York; that the said purchaser there saw and examined the picture, and that the complainant there absolutely and unconditionally sold the same to the purchaser for a valuable consideration in money without any restriction or reservation of any kind whatsoever, and that the said picture in pursuance of the said sale was delivered and transferred by the complainant to the purchaser unconditionally and without any reservation; that the purchaser bought the picture for the purpose of re-selling the same; that he immediately sent the picture to a firm in this city engaged in the business of buying and selling pictures and engravings for themselves and others; that the picture was there publicly exposed for sale in their store; that the respondent saw the picture in their store and that they, acting in behalf of the purchaser and owner of the same, sold it to the respondent for a valuable consideration in money; that the sale to the respondent was made absolutely and unconditionally and without any restriction or reservation of any kind whatsoever, and that the picture was then and there delivered and transferred to the respondent unconditionally and without any reservation; that the respondent called upon the complainant and informed him that he had purchased the picture and that he intended to publish it as a chromo; that the complainant made no objection to the proposed publication, but advised the respondent as to the best manner of making the chromo, suggesting that if he change the tint of the background, as the respondent had told the complainant he proposed to do, he would injure the chromo, and advised him to copy the picture exactly as it was at

the time of purchase; that the said chromos were made and prepared for the market at great expense of time, trouble, and money, as the complainant well knew, and that the complainant during all the time the respondent was engaged in preparing and making the same, made no objection to his acts and never claimed that he had any right to prevent the publication. Instead of filing the general replication denying the allegations of the answer, the complainant elected to set down the cause for hearing upon bill and answer.

Thomas W. Clark and William D. Booth, for complainant.

By sale of an oil painting, does the artist convey his ideal property in the conception of the subject, the combination and effect of its treatment, as well as the particular, tangible, and visible embodiment of that ideal? We say, as an undoubted proposition of law, at the same time of the sale of this picture by Parton, at the time of purchase by Prang, at the time of the conversation in March, 1870,—no person could acquire any right to make copies of the picture by engraving or other reproduction, but the first designer or by his express authority in apt words and form. Curtis, Copyr. 146; Binns v. Woodruff [Case No. 1,424]; Pierpont v. Fowle [Id. 11,152]; Atwill v. Ferrett [Id. 640].

Prang could only register the copyright as Parton's assignee,—as the assignee of the incorporeal contents of Parton's manuscript. This assignment he never had in any form, and no pretence is made of even remotely following the form prescribed by statute, in writing, in presence of two witnesses, even to give him title to the picture itself. At most he claims a verbal license to publish without copyrighting. But he has copyrighted. This is a wrong to us which demands a remedy. His copyright pretends to exclude all the world from that formulation. He claims by the conversation a license simply, a license he might share with others. He claims by his copyright an exclusive right, an assignment by Parton, whose name appears as designer on the picture. In other words, he asserts the absurdity that an equitable non-exclusive license is equivalent to an absolute assignment.

Three cases of infringement of copyright in pictures appear in the English Reports; in each the title was derived from the author after a sale of the picture. Turner v. Robinson, 10 Ir. Ch. 121. 150; Martin v. Wright, 6 Sim. 297; In re Graves, L. R. 4 Q. B. 715, 10 Best & S. 680; Ex parte Beal, L. R. 3 Q. B. 387.

On principle and authority, the following propositions are law, and they are decisive for the plaintiff: That, by designing a work of art, the artist acquires an exclusive right to multiply the same, which continues till publication in print by his authority, independently of his physical control of the embodiment he has given it. This right he may assign by deed, like a land deed, but not otherwise. The exercise of this right he may license by writing, in presence of two witnesses, but not otherwise. The transfer of one or more manuscript embodiments of his ideal conveys no part of this right, unless apt written words of conveyance are duly set in order, and signed by him. When there is a statute of frauds, there is no presumption of license or laches from any act or thing which is within the terms of the statute. Neglect to warn a man against a trespass is no license to him to commit it. No personal prohibition or restrictive notice is necessary to prevent a man from acquiring adverse rights in an unlawful way. The rights plaintiff once had, and has never assigned, are in him yet, and exclude Prang's claims and title.

O. S. Knapp, S. Z. Bowman, and H. W. Chaplin, for respondent.

An author, or artist, has at common law an exclusive property in his unpublished works, in the enjoyment of which equity will protect him. This property continues, however, only until publication. Jefferys v. Boosey, 4 H. L. Cas. 815; Turner v. Robinson, 10 Ir. Ch. 121, on appeal, Id. 510; Wheaton v. Peters, 8 Pet. [33 U. S.] 591; Keene v. Wheatley [Case No. 7,644]; Bartlett v. Crittenden [Id. 1,076]; 2 Kent, Comm. 495.

The painting has been published, the facts of this case bringing it neither within the letter nor within the reason of the established rules which protect unpublished works. But even if the painting has not been "published," the complainant cannot maintain his bill. The defendant has succeeded to the complainant's literary property in the picture. It is only under the United States statute of 1831 that the complainant can assert the claim (which his bill indicates), that an assignment or license of this kind must be in writing. Except by that act either might be verbal. This statute expressly, and in terms, applies only to "manuscripts."

Copyright Act 1831, § 13: "Any person or persons who shall print or publish any manuscript whatever without the consent of the author," etc. Now, under no possible definition or use of the language. either in law or literature. can it be held that the word "painting" means "manuscript," or vice versa.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

CLIFFORD, Circuit Justice. The case now stands in the same posture as if a demurrer had been filed to the bill, which would admit that everything well pleaded in the answer was fully proved. 2 Daniell, Ch. Prac. (3d Ed.) 998; Gettings v. Burch, 9 Cranch [13 U. S.] 372; Leeds v. Marine Ins. Co., 2 Wheat. [15 U. S.] 380; Brinckerhoff v. Brown, 7 Johns. Ch. 217; Dale v. McEvers, 2 Cow. 118. Viewed in the light of that well-settled rule of practice, it must be assumed as fully

proved that the complainant sold the picture for a valuable consideration to the vendor of the respondent, and that the same was delivered by the complainant to the purchaser unconditionally and without any reservation, and that the purchaser from the complainant in like manner sold the picture for a valuable consideration to the respondent, and that he delivered the same to the respondent unconditionally and without any reservation.

Copyright may be granted under the copyright act, to the author of any book, map, chart, or musical composition falling within the classes described in section 1 of the act, if the author is a citizen of the United States or permanently resident therein, and the same privilege is also extended by the same section to any such citizen or permanent resident, who shall invent, design, etch, engrave, work, or cause to be engraved, etched, or worked from his own design any print or engraving; and section 1 also provides that such persons and their executors, administrators, or legal assigns, shall have the sole right and liberty of printing, reprinting, publishing, and vending such book, map, chart, musical composition, print, cut, or engraving for the term of twenty-eight years from the time of recording the title as therein directed. 4 Stat. 436. Persons printing, publishing, or importing any copy of a book so copyrighted, or causing the same to be printed, published, or imported without the consent of the person legally entitled to the copyright first had and obtained in writing, signed in presence of two or more credible witnesses, shall forfeit every copy of such to the person legally entitled at the time to the copyright thereof, and the same penalty is imposed upon any person who knowing the same to be so printed or imported, shall publish, sell, or expose to sale any copy of such book without such consent in writing. and that the offender shall also forfeit and pay fifty cents for every such sheet which may be found in his possession, either printed or printing, published, imported, or exposed to sale contrary to the intent of that act. Id. 438. Protection is also afforded by section 7 of the act, to any cut or engraving, map, chart, or musical composition so copyrighted; and the provision is that if any person shall within the term engrave, etch or work, sell or copy, or cause to be engraved, etched, worked or sold, or copied, or shall print or import for sale, or cause to be imprinted or imported for sale, any such map, chart, musical composition, print, cut, or engraving. without the consent in writing of the proprietor signed in the presence of two credible witnesses, or knowing the same to be so printed or imported without such consent, shall publish, sell, or expose to sale any such map, chart, musical composition, engraving, cut or print, shall forfeit to the proprietor the plate or plates, on which such map, chart, musical composition, cut or print

shall be copied, and also one dollar for every sheet of such map, chart, musical composition, print, cut, or engraving which may be found in his possession, printed or published, or exposed to sale contrary to the true intent and meaning of that act. Id. 438. Provision is also made by section 9 of the same act, that any person or persons who shall print or publish any manuscript whatever, without the consent of the author or legal proprietor first obtained as aforesaid, if a citizen of the United States or resident therein, shall be liable to suffer and pay to the author or proprietor all damages occasioned by such injury, to be recovered by a special action on the case, and the federal courts empowered to grant injunctions to prevent the violation of the rights of authors and inventors, are thereby empowered to grant injunctions in like manner, to restrain such publication of any manuscript. Id. 438.

Based upon that section of the copyright act, the proposition of the complainant is, that the respondent did not acquire, by the alleged purchase of the picture, any right whatever to reproduce the picture, or to make a chromo of the same, as he admits in his answer he has done, that he could not acquire such a right by any oral contract of sale, or of sale and delivery, even though the sale and delivery were for a valuable consideration, and were absolute and unconditional; that he could only acquire such a right by the consent of the author or legal proprietor in writing, signed in the presence of two credible witnesses, as required by that section, in order to acquire the right to print or publish a manuscript, which the pleadings show the respondent in that form never obtained. Manuscripts of every kind are embraced in that section, but pictures are not named in the provision, and cannot be regarded as entitled to that special protection, unless it be held that the word manuscript includes pictures, which is affirmed by the complainant and denied by the respondent, and that issue presents the principal question in the case. Standard lexicographers certainly do not concur with the complainant, as for example, Webster treats the word as derived from Latin, manus, the hand, and scribere, scriptum, to write, and as synonymous with manuscriptum, meaning literally, something written with the hand, a book or paper written with the hand or a written, as distinguished from a printed, document. On the other hand, the same learned author treats the word picture as derived from Latin pingere, pictum, to paint, and as synonymous with pictura, and defines the word as meaning that which is painted, a likeness drawn in colors, hence, any graphic representation. as of a person, a landscape or a building; and he adopts the language of Bacon, in which he says that pictures and shapes are but secondary objects, showing that in his view the picture presents the objects to the observer as a

whole, whereas the manuscript only describes the parts or elements of the object, leaving the mind of the reader to aggregate those parts or elements into an entire figure or whole. Worcester's definition of those two words is substantially the same as the definitions given by Webster. He treats the word manuscript as derived from the Latin words, manus, the hand, and scriptum, something written, and defines its meaning as a paper written, a writing of any kind, in contradistinction to printed matter. His definition of the word "picture" also corresponds with that given by the first-named author. He derives it from the Latin word, pictura, and defines it as a representation or likeness in colors, a painting or drawing. Bouvier also defines manuscript as a writing, a writing which has never been printed, and refers to the right of an author as secured by the copyright act, and as conceded at common law, but adds that these rights will be considered as abandoned, if the author publishes his manuscript without securing the copyright under the act of congress. Mere definitions, however, do not portray the difference between a manuscript and a picture as fully or as strikingly as it is seen when the two things are compared and contrasted as means of instruction, or of imparting an idea or description of the object or subject matter of the manuscript or picture. Separate description of each element of the object is required in the manuscript describing the several parts of which it is composed, the nature, material, appearance, size, color, dimensions, use, and everything essential to enable the reader to form an idea of what the object is which is embraced in the description given in the manuscript, all these must be considered and combined by the reader in order that he may be able to form an ideal picture of the object described or the subject-matter of the entire description. His ideal picture may or may not be in accordance with the object actually described in the manuscript, as the object itself is not presented to the senses of the reader. On the contrary, he is left to portray in his own mind the outlines of the object from the written description, and so to combine the same as to suggest an ideal picture of the object described.

Whatever conclusion the reader of the manuscript may form, it is but an ideal picture, made in his own mind from the written description of the object, and necessarily calls into exercise all the creative faculties of the mind. No such operation of the mind is involved, where the picture or painting of the object is presented to the observer, as the object itself in a secondary form, "drawn in colors," is presented externally to the sense of sight. In the latter case, no ideal of the mind is necessary, as the thing itself is presented physically to the natural eye. Briefly stated, the picture is the thing itself, but the manuscript is only the description of it in language, and leaves the mind of the reader to make the picture, or, in other words, the picture presents, at a glance, all the characteristics of the object exactly as it exists, but the manuscript only enumerates and describes those characteristics one by one, imposing upon the mind of the reader the labor of aggregating the same into a whole and presenting to his perceptions an ideal of the described object. Different communities employ diverse characters for letters and even for phrases, but it can make no difference what the characters are that are employed in describing such an object, not even if they are arbitrary signs, so long as it remains true that the manuscript is a description of the object and not the presentation of the object itself or its portrait, as the manuscript, while it retains that character, is simply the registry of certain thoughts or ideas about a thing and not the exhibition of the thing itself, as in the case of a picture. Unsupported as the proposition of the complainant is, by any legal adjudication, the argument of the respondent is a forcible one that the construction of § 9 of the copyright act must be controlled by the well-established rule that the words of a statute, if of common use, are to be taken in their natural, plain, obvious, and ordinary signification and import, unless it clearly appears from the context or other parts of the enactment, that the words were intended to be applied differently from their ordinary or their legal acceptation. 1 Kent, Comm. (11th Ed.) 462; Martin v. Hunter's Lessee, 1 Wheat. [14 U. S.] 326; Waller v. Harris, 20 Wend. 561; Doane v. Phillips, 12 Pick. 226. Nothing is shown in the context of the enactment to favor the theory of the complainant, and inasmuch as the usual and ordinary signification and import of the two words is opposed to such a theory, it is difficult to see how it can be adopted without doing violence to the most approved canons of construction. Dwar. St. (2d Ed.) 573; Smith, Const. Law, §§ 505, 545.

Strong support to the opposite view is derived as a legislative expression, from section 86 of the subsequent and recent copyright act, which, in terms, extends the privilege of copyright to the author, inventor, designer, or proprietor of a painting, drawing, chromo, statue, statuary, and models and designs intended to be perfected as works of the fine arts as well as to the author, inventor, designer, or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph, or negative thereof, giving to such authors, inventors, designers, and proprietors, the sole liberty of printing, publishing, completing, copying, executing, finishing, and vending the same for the term of years therein mentioned. All persons without the consent of the proprietor of the copyright in writing, signed in the presence of two or more credible witnesses, are forbidden to engrave, etch,

work, copy, print, publish, or import any copy of such map or other article, and the provision of section 100 is that if any person shall violate the prohibition as therein expressed, he shall forfeit to the said proprietor all the plates on which the same shall be copied, and every sheet thereof, and in case of a painting, statue, or statuary, he shall also forfeit ten dollars for every copy of the same in his possession. Unquestionably the provision, so far as it relates to a picture, is entirely new, and it will be observed that it does not embrace a manuscript, but section 102 is substantially the same as section 9 in the prior act, and that both alike are in terms confined exclusively to the protection of manuscripts. 16 Stat. 212, 214. Viewed in the light of these suggestions, the court is of the opinion that the word "manuscript," as used in section 9 of the copyright act, does not include a picture, and that a purchaser of a picture, such as the one described in the bill, may acquire a title to the same by an oral contract with the lawful owner, that the consent of the author or proprietor in writing, signed in the presence of two credible witnesses, was not necessary under that act to obtain the right to reproduce or chromo the same, provided such consent was fairly and understandingly obtained, and for a valuable consideration.

Suppose it is not necessary that the consent of the author or proprietor of a picture should be in writing to render the sale valid, still it is contended by the complainant that neither the sale in this case to the vendor of the respondent, nor the purchase of the same by the respondent from the vendee of the complainant, even though the sale and delivery of the picture in each case was absolute and unconditional or both combined, had the effect to transfer to the respondent the right to reproduce or chromo the picture, that in selling and delivering the picture, and subsequently suffering his vendee to sell and deliver the same to the respondent, he only parted with the result of his labor as property, that he did not part with the right to reproduce or chromo-lithograph the picture, that the right to multiply copies of the picture was vested in him as the author and proprietor of the same, and that he still retains that right notwithstanding the sale and delivery by himself and the subsequent purchase by the respondent. Undoubtedly, the author of a book or of an unpublished manuscript, or of any work of art, has at common law and independently of any statute, a property in his work until he publishes it or it is published by his consent or allowance, and that property unquestionably exists in pictures as well as in any other work of art. He has the undisputed right to his manuscript, he may withhold or he may communicate it, and communicating, he may limit the number of persons to whom it shall be imparted, and impose such restrictions as he pleases upon the use of it. He may annex

conditions and proceed to enforce them, and for their breach he may claim compensation. Jefferys v. Boosey, 4 H. L. Cas. 815–961; Millar v. Taylor, 4 Burrows, 2396; Queensberry v. Shebbeare, 2 Eden, 329. Numerous other decided cases also affirm the same proposition, that the author of an unpublished manuscript has the exclusive right of property therein, and that he may determine for himself whether the manuscript shall be made public at all, that he may in all cases forbid its publication by another before it has been published by him or by his consent or allowance, that a painter also has at common law the same right before publication to prevent any person from copying it, and that the purchaser and owner of the picture holding the title from the painter or his assigns, has the same right before publication, to prevent another from multiplying copies of it or reproducing the picture, but the authorities all agree that after publication, that right is lost. Turner v. Robinson, 10 Ir. Ch. 121, on appeal, Id., 510; Fisher v. Folds, 1 Jones, 12; Wheaton v. Peters, 8 Pet. [33 U. S.] 591; Keene v. Wheatley [Case No. 7,-644]; Bartlett v. Crittenden [Id. 1,076]. An author, said Hoar, J., in Keene v. Kimball, 16 Gray, 549, has at common law a property in his unpublished works, which he may assign, and in the enjoyment of which, equity will protect his assignee as well as himself. This property continues until by publication a right to its use has been conferred upon or dedicated to the public.

Independently of legislation, the sole proprietorship of a manuscript is in the author and his assigns until he publishes it, but an unqualified publication, such as is made by printing and offering copies for sale, dedicates the contents to the public unless the sole right and liberty of printing, reprinting, publishing, and vending the same is secured to the author or proprietor by copyright. But there may be a limited publication by communication of the contents by reading, representation, or restricted private circulation which will not abridge the right of the author any further than necessarily results from the nature and extent of such limited use as he has made or allowed others to make of the manuscript or painting, or, as Lord Brougham said in Jefferys v. Boosey, 4 H. L. Cas. 961, he may withhold or he may communicate it, and communicating, he may prescribe limitation and impose such restrictions as he please as to the extent of its use, which fully justifies the conclusion in Keene v. Kimball, that when a literary proprietor has made a publication in any mode not restricted by any condition, other persons acquire unlimited rights of republishing in any mode in which his publication may enable them to exercise such a right. Keene v. Kimball, 16 Gray, 550. Assignments of a manuscript are required to be in writing by the copyright act, but enough has been remarked to show that a picture under that act might be trans-

ferred by an oral contract, and it is well settled law that even copyright is an incident to the ownership of a manuscript, and that it passes at common law with the transfer of a work of art. Turner v. Robinson, 10 Ir. Ch. 121; Power v. Walker, 3 Maule & S. 9. Hence the remark of the court in Turner v. Robinson, that it was a strange proposition that the transfer of property should destroy and extinguish that which principally constitutes the value of the thing transferred, meaning not that the right to publish did not pass by the sale, but that the exclusive right of publication which attached to the manuscript was not lost by the transfer. Such a transfer of the manuscript or picture is not a publication of the same unless it was so intended by the parties, but if the sale was an absolute and unconditional one, and the article was absolutely and unconditionally delivered to the purchaser, the whole property in the manuscript or picture passes to the purchaser, including the right of publication, unless the same is protected by copyright, in which case the rule is different. Baker v. Taylor [Case No. 782]; Ryan v. Goodwin [Id. 12,186]; Wood v. Zimmer, Holt, N. P. 60; Pennock v. Dialogue, 2 Pet. [27 U. S.] 14.

Personal property is transferable by sale and delivery, and there is no distinction in that respect, independent of statute, between literary property and property of any other description. [Palmer v. De Witt, 2 Sickles (47 N. Y.) 532; Id., 7 Rob. (N. Y.) 530.] [2] Owners of personal property have the right to sell and transfer the same as inseparable incidents of the property, and the author or proprietor of a manuscript or picture possesses that right as fully and to the same extent as the owner of any other personal property; the same being incident to the ownership. Sales may be absolute or conditional, and they may be with or without qualifications, limitations, and restrictions, and the rules of law applicable in such cases to other personal property must be applied in determining the real character of a sale of literary property. Proper attention to these considerations will furnish the true explanation of many, if not all the cases referred to by the complainant, which are supposed to support the second proposition for which he contends. Prince Albert v. Strange, 1 Hall & T. 1; Queensberry v. Shebbeare, 2 Eden, 329; Bishop of Hereford v. Griffin, 16 Sim. 196; Steven v. Cady, 14 How. [55 U. S.] 528; Stevens v. Gladding, 17 How. [58 U. S.] 447; Abernethy v. Hutchinson, 1 Hall & T. 28.

Beyond doubt, the right of first publication is vested in the author; but he may sell and assign the entire property to another, and if he does so his assignee takes the entire property, and it is a great mistake to suppose that any act of congress, at the date of the sales of the picture in this case, required

that such an assignment should be in writing; and the pleadings show that the sale and delivery in each case were absolute and unconditional, and without any qualification, limitation, or restriction, showing that the entire property was transferred from the complainant and became vested in the respondent. Sims v. Marryatt, 17 Adol. & E. [N. S.] 281; Adderley v. Dixon, 1 Sim. & S. 607. Confirmation of that view, if any be needed beyond what appears in the express allegations of the answer to that effect, is also found in the further allegation that the respondent called upon the complainant immediately after the sale and delivery to him, and informed the complainant that he intended to publish the picture as a chromo, and that the complainant made no objection to the proposed publication, showing that the complainant as well as the respondent understood that the entire property of the picture was vested in the respondent. It is insisted by the respondent that the acts and declarations of the complainant on that occasion, as more fully set forth in the answer, estop the complainant from making any such claim as that set up in the bill; but it is unnecessary to decide that question, as the court is of the opinion that those acts and declarations amount to a practical affirmance of the contract of sale and delivery of the entire property of the picture, as understood and claimed by the respondent. Freeman v. Cooke, 6 Dow. & L. 187; Boucicault v. Fox [Case No. 1,691]; Bigelow, Estop. 475. Neither a conditional sale nor any unfairness is shown, and as neither exists in the case, it must be held that the complainant parted with the entire property in the picture. Pope v. Curl, 2 Atk. 342; Thompson v. Stanhope, Amb. 737; Mayall v. Higbey, 1 Hurl. & C. 148; Jones v. Thorne, 1 N. Y. Leg. Obs. 408; Dalglish v. Jarvie, 2 Macn. & G. 231; Martin v. Wright, 6 Sim. 297; Reade v. Conquest, 9 C. B. (N. S.) 755. Unfairness is not pretended in this case, and inasmuch as the sale and delivery were in their terms absolute and unconditional and without any reservation, restriction, or qualification of any kind, the court is of the opinion that complainant is not entitled to relief.