## HARPER & BROS. et al. v. KALEM CO. et al.

### (Circuit Court of Appeals, Second Circuit. March 16, 1909.)

### No. 159.

1. COPYRIGHTS (§ 7*)—DRAMATIZATIONS.
    There may be several dramatizations of the same story, each capable of being copyrighted.
    [Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 7.*]

2. COPYRIGHTS (§ 50*)—DRAMATIZATIONS—SALE.
    The owner of a copyrighted story, having assigned or sold the right of performing a particular copyrighted drama therefrom, could lawfully give to another the sole right of performing a different dramatic composition of the story, while the first dramatic assignee would have no right to make another dramatization.
    [Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 50.*]

3. COPYRIGHTS (§ 9*)—MOVING PICTURE PHOTOGRAPH.
    A series of photographs of a dramatization of a copyrighted story of Ben Hur, to be used in a moving picture machine, constituted a single picture, capable of copyright as such.
    [Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 9.*]

4. COPYRIGHTS (§ 55*) — MOVING PICTURES — COPYRIGHTED STORY — INFRINGEMENT.
    Since pictures of the dramatization of Ben Hur only represent the artist's idea of what the author has expressed in words, they do not, as a photograph, infringe the copyrighted book or drama.
    [Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 55.*]

5. COPYRIGHTS (§ 55*)—MOVING PICTURE EXHIBITION.
    A series of films, constituting a picture of an artist's conception of the copyrighted story Ben Hur, when placed on an exhibiting machine, which reproduces the action of the actors and animals, was a dramatization of the story, which, when sold and offered for sale by defendant for public exhibitions, at which an entrance fee is charged, constituted a contributory infringement, subject to injunction.
    [Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 55.*]

6. COPYRIGHTS (§ 4*)—STATUTES—CONSTRUCTION—"WRITINGS."
    Const. U. S. art. 1, § 8, provides that Congress shall have power to promote the progress of science and useful arts by securing for a limited time to authors and inventors an exclusive right to their "writings" and discoveries. *Held*, that the word "writings" includes maps, charts, engravings, etchings, prints, paintings, drawings, chromos, statues, models, designs, photographs, and the negatives thereof, dramatizations of copyrighted works, and may also be extended to moving pictures, tending to reproduce an artist's conception of an author's situation as described in words.
    [Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 4.*
    For other definitions, see Words and Phrases, vol 8, p. 7542.]

---

*For other cases see same topic &.§ NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Southern District of New York.

Drury W. Cooper and Frank L. Dyer, for appellant.

Dittenhoefer, Gerber & James (David Gerber, of counsel), for appellees Klaw & Erlanger.

John Larkin, for appellees Harper & Bros. and L. Wallace.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The late Gen. Lew Wallace wrote a story called "Ben Hur," the copyright of which belongs to the complainants Harper & Bros. The complainants Klaw & Erlanger caused the story to be dramatized, and Harper & Bros. duly copyrighted the dramatization and thereupon granted Klaw & Erlanger the sole right of producing the same upon the stage. The defendant the Kalem Company also employed a writer to read the story, without having any knowledge of the copyrighted drama, and to write a description of certain portions of it. It then produced persons and animals, with their accoutrements, to perform the actions and motions so described. During this performance a film of celluloid was rapidly moved across the lens of a highspeed camera, on which a series of negative photographs were taken, from which a positive film suitable for exhibition purposes was reproduced. These positive photographs were contained on one film, about 1,000 feet long, which, being driven at great speed across the lens of an exhibiting machine, projects all the motions of the original actors and animals in succession upon a screen. The defendant advertises this film as suitable for giving public exhibitions of the story of Ben Hur, and sent advertisements to, among other persons, proprietors of theatoriums. At least 500 exhibitions have been given in such theatoriums; an entrance fee being charged. The defendant did not reproduce the whole story, but only certain of the more prominent scenes, such as the wounding of the Roman procurator, Ben Hur in the galleys, the chariot race, and others. It does not itself give any public or private exhibitions, but simply sells or licenses the use of the films. A final decree granting a perpetual injunction was entered in the court below, from which this appeal is taken.

Section 4952, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3406), gives the author of a book, and his assigns, not only the sole right of printing, but also the sole right of dramatizing it, and in case of a dramatic composition the sole right of performing or representing it publicly. Section 4964 (page 3413) subjects any one who shall dramatize a copyrighted book without the written consent of the proprietor to the payment of damages. Section 4966 (page 3415) provides that any one who publicly performs or represents a copyrighted dramatic composition without the owner's consent shall be liable for damages not less than $100 for the first and $50 for every subsequent performance, and if his conduct be willful and for profit he shall also on conviction be imprisoned for not exceeding one year.

Two questions are raised: First. Did the defendant, by taking this series of photographs, dramatize Ben Hur, in violation of Harper &

Bros.' sole right to dramatize the book under section 4952? Second. Is the exhibition of these photographs by means of an exhibiting machine in theatoriums, where an entrance fee is charged, a public performance or representation of a dramatic composition, in violation of the rights of Harper & Bros., as owners of the copyright of the book and of the dramatic composition, and of the rights of Klaw & Erlanger, as owners of the performing right, under section 4966. There may be several dramatizations of the same story, each capable of being copyrighted. Harper & Bros., having given Klaw & Erlanger the sole right of performing the particular copyrighted drama, can give some one else the sole right of performing a different dramatic composition of the story (Drone on Copyright, p. 597); whereas, Klaw & Erlanger, who are the owners only of the right publicly to perform the particular copyrighted drama, have no right to make another dramatization. Consequently infringing the copyrighted drama is a different thing from infringing the owner's right to dramatize the copyrighted book.

Answering the first question: The series of photographs taken by the defendant constitutes a single picture, capable of copyright as such (Edison v. Lubin, 122 Fed. 240, 58 C. C. A. 604; American Mutoscope Co. v. Edison [C. C.] 137 Fed. 262); and as pictures only represent the artist's idea of what the author has expressed in words (Parton v. Prang, 3 Cliff. 537, Fed. Cas. No. 10,784), they do not infringe a copyrighted book or drama, and should not as a photograph be enjoined. This distinction between infringement of a copyright of a book and of the performing rights is like the distinction in respect to an infringement between perforated music rolls and sheet music discussed in the case of White-Smith Co. v. Apollo Co., 209 U. S. 1, 28 Sup. Ct. 319, 52 L. Ed. 655, where the court said:

"There is no complaint in this case of the public performances of copyrighted music, nor is the question involved whether the manufacturers of such perforated music rolls, when sold for use in public performances, might be held as contributory infringers."

Coming now to the second question: When the film is put on an exhibiting machine, which reproduces the action of the actors and animals, we think it does become a dramatization, and infringes the exclusive right of the owner of the copyrighted book to dramatize it, as well as his right as owner of the copyrighted drama, and of Klaw & Erlanger's right as owners of the performing right publicly to produce it. In other words, the artist's idea of describing by action the story the author has written in words is a dramatization. It is not necessary that there should be both speech and action in dramatic performances, although dialogue and action usually characterize them. Judge Blatchford said on this point, in Daly v. Palmer, 6 Blatchf. 256, Fed. Cas. No. 3,552:

"To act, in the sense of the statute, is to represent as real, by countenance, voice, or gesture, that which is not real. A character in a play who goes through with a series of events on the stage without speaking—if such be his part of the play—is none the less an actor in it than one who, in addition to motions and gestures, uses his voice. A pantomine is a species of theatrical entertainment, in which the whole action is represented by gesticulation, without the use of words."

And this court, in the case of Daly v. Webster, 56 Fed. 483, 4 C. C. A. 10, said:

"Upon the main point of the case, namely, whether the combination or series of dramatic events (apart from the dialogue) which makes up the particular scene or portion of the play claimed to be infringed is a dramatic composition, and as such entitled to protection under the copyright laws, it is necessary to add but little to the exhaustive opinion of Judge Blatchford, reported in Daly v. Palmer, 6 Blatchf. 256, Fed. Cas. No. 3,552. The same scene in the same play is elaborately discussed by him, and in his conclusion that it is a dramatic composition we concur. In plays of this class the series of events is the only composition of any importance. The dialogue is unimportant, and as a work of art trivial. The effort of the composer is directed to arranging for the stage a series of events so realistically presented, and so worked out by the display of feeling or earnestness on the part of the actors, as to produce a corresponding emotion in the audience. Such a composition, though its success is largely dependent upon what is seen, irrespective of the dialogue, is dramatic. It tells a story which is quite as intelligible to the spectator as if it had been presented to him in a written narrative."

It can hardly be doubted that, if the story were acted without dialogue, the performance would be a dramatization of the book; and we think that, if the motions of the actors and animals were reproduced by moving pictures, this would be only another form of dramatization. If the defendant had taken a series of moving pictures of the play as actually performed by Klaw & Erlanger, the exhibition of them would certainly be an infringement of the dramatic composition, because it would tell the story as they tell it, within the decision of Daly v. Palmer and Daly v. Webster, supra.

It is next objected that the defendant cannot be held as a contributory infringer, because its films are capable of innocent use; e. g., exhibitions for private amusement. This fact only compels the complainants to prove that the defendant does promote a guilty use of them. Inasmuch as it advertises the films as capable of producing a moving picture spectacle of Ben Hur, and sends its advertisements to proprietors of theatoriums with the expectation and hope that they will use them for public exhibitions, charging an entrance fee, and inasmuch as many of these proprietors have so used them, the defendant is clearly guilty of contributory infringement.

Finally, the defendant relies upon section 8, article 1, of the Constitution, that Congress shall have the power "to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." It is argued from this that, as these moving pictures only express the artist's conception of the author's ideas as expressed in the words of the copyrighted book or dramatic composition, they cannot be said to infringe the author's rights. But the history of the copyright law does not justify so narrow a construction of the word "writings." The first copyright law of 1790 (Act May 31, 1790, c. 15, 1 Stat. 124), included maps and charts as well as books. In 1802 (Act April 29, 1802, c. 36, 2 Stat. 171) copyright was extended to engravings, etchings, and prints. In 1856 (Act Aug. 18, 1856, c. 169, 11 Stat. 138) it was extended in the case of copyrighted dramatic compositions to the right of publicly performing the same. In 1870 (Act July 8, 1870, c. 230, 16 Stat. 212) it was extended to paintings, drawings, chromos, statues, models,

designs, photographs, and the negatives thereof, and authors were also allowed to reserve the right to dramatize their works. In 1891 (section 4952, Rev. St. U. S.) authors and their assigns were given the exclusive right to dramatize their copyrighted works. The construction of the word "writings" to cover these various forms of expression, and also to cover the right of giving public performances, has been acquiesced in for over 50 years. In view of this fact, we have no difficulty in concluding that moving pictures would be a form of expression infringing not the copyrighted book or drama, but infringing the author's exclusive right to dramatize his writings and publicly to perform such dramatization.

Decree affirmed.