SOCIÉTÉ DES FILMS MENCHEN v. VITAGRAPH CO. OF AMERICA et al.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

No. 206.

1. COPYRIGHTS ⬅82—BILL FOR INFRINGEMENT—SUFFICIENCY.

A bill praying that defendant's copyright for a motion picture photoplay, based on the same incidents as a drama, which did not show in complainants any right to the copyright of the drama, or negative as to defendant's photoplay, the fact that there might be a separate copyrightable property therein, though it told substantially the same story as did the earlier stage play, whose incidents complainants' photoplay followed, is insufficient to state a cause of action based on a violation of copyright.

2. COPYRIGHTS ⬅20—PERSONS ENTITLED—AGENTS.

As the privilege of copyrighting is reserved to authors and proprietors by Act March 4, 1909, § 8 (Comp. St. 1916, § 9524), an agent has no power to copyright anything.

3. COPYRIGHTS ⬅82—INFRINGEMENT—BILL—SUFFICIENCY.

A bill praying that defendant's copyright for motion picture photoplay should be adjudged void, and for an accounting, etc., held insufficient to state a cause of action on the theory that defendants were enjoying profits from a motion picture film or story depicted thereon, made by a second company under agreements with complainant, and by that company permitted to be sold and exhibited in United States in violation of such contracts.

4. COPYRIGHTS ⬅36—LOSS OF COMMON-LAW RIGHTS.

Where authors took out a copyright, they lost their common-law rights, and an assignee of their cinematographic rights is not entitled to protection independent of the copyright.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Société Des Films Menchen against the Vitagraph Company of America and others. From a decree dismissing the bill, complainant appeals. Affirmed.

In 1909 De Croisset and Leblanc, citizens of France, copyrighted in the United States a drama entitled, "Arsene Lupin." Leblanc is the author of a series of stories, in all of which the same leading character appeared, and known as the "Arsene Lupin Stories." In 1913 Leblanc agreed in writing

with Menchen (plaintiff's assignor) that he "transfers to [Menchen] all cinematographic rights that he may have" in a given list of Arsene Lupin stories and "all others to be written by him," but the list does not contain the drama "Arsene Lupin," nor the novel or story on which we may assume it was based.

In 1915 Menchen made written contract with the London Film Company, whereby the latter obtained the "sole and exclusive license to select and produce one of said works (i. e., Arsene Lupin stories) in moving picture films," and exhibit and use the same in divers parts of the world, but not in the United States. Whenever the Film Company made such film, however, they were to furnish Menchen with one exemplar "expressly designed to meet trade conditions in America." Leblanc by a separate writing substantially agreed to Menchen's arrangements with the Film Company. In 1916 De Croisset and Leblanc agreed with Menchen that the "stage play," Arsene Lupin, might be included among the stories aforesaid and used "as the subject for the first film to be produced" under the agreements above referred to, and on the same date the Film Company received written permission from De Croisset et al. to use the said stage play as "the subject for the first film" to be produced under the Film Company's arrangement with Menchen. Later in the same year the Film Company—as is alleged—"by one Cromelin, for the benefit of" the plaintiff, copyrighted in the United States a "motion picture photoplay" called "Arsene Lupin, by Maurice Leblanc," and adapted by one Tucker. In so doing Cromelin is said to have acted as "agent of" the Film Company.

Early in 1917 defendants are alleged to have made a "motion picture photoplay" of their own, described as by one Paul Potter, called "Arsene Lupin," and depicting substantially the sequence of episodes and characters in De Croisset and Leblanc's drama as copyrighted in 1909, and this the defendant Vitagraph Company copyrighted in its own name. The bill, showing diversity of citizenship, prayed injunction against any "dealing with" defendant's play, an accounting, and that the copyright by defendant, Vitagraph Company be adjudged null and void.

On motion, under rule 29 (150 Fed. xxxiv, 79 C. C. A. xxxiv), alleging that no cause of action was shown, the bill was dismissed, and plaintiffs appeal.

Rogers & Rogers, of New York City (Gustavus A. Rogers and Saul E. Rogers, both of New York City, of counsel), for appellant.

Seabury, Massey & Lowe, of New York City (W. M. Seabury, of New York City, of counsel), for appellees.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1, 2] This action must be based on violation of some copyright, owned by plaintiff, and be brought by virtue of the statute regulating copyrights, or it asserts that defendants are contravening some equitable right of plaintiff and rests jurisdiction on diversity of citizenship. The language of the bill, construed by the contracts appended to and made part thereof, leaves us in considerable doubt as to the pleader's intention.

Viewed as a copyright bill it must rest either on the registration of 1909 as to the drama or "stage play," or that of 1916, by Cromelin, of the motion picture photoplay. In either aspect it falls on the face of the pleading, because as to the first assumption there is no endeav-

or to show or allege ownership of the copyright of 1909, or to negative as to defendant's production the fact that there may be a separable and several copyrightable property in the photoplay, though it tells substantially the same story as does the earlier stage play. Harper v. Kalem, 169 Fed. 61, 94 C. C. A. 429, affirmed 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285. In respect of the second supposition, the registration by Cromelin is, as pleaded, void, for under the act no power exists in an "agent" to copyright anything; that privilege is reserved to "authors or proprietors." Act March 4, 1909, c. 320, § 8, 35 Stat. 1077 (U. S. Comp. Stat. § 9524).

[3] The only meaning we can extract from the bill—if it does not fail for lack of ownership of any copyright, nor rest on that statute—is that plaintiff believes and intends to assert that defendants are enjoying profits from a film or the story depicted thereon, made by the London Film Company, and by that concern permitted to be sold and exhibited in the United States in violation of the series of contracts above summarized.

But it is not so pleaded; on the contrary, the bill declares that, months after Cromelin's registration of what Tucker had adapted, defendants made their own film from a scenario by Potter. To be sure, it is plain enough that both these writers derived their ideas from the stage play of 1909; but it is not even alleged that Potter infringed (i. e., substantially copied) Tucker. Much less is it stated that defendants have obtained or pretend to have any rights derived by assignment or otherwise from Cromelin, De Croisset, Leblanc, or the London Film Company, or that any of the foregoing is co-operating with defendants, or deriving profit from what they have done and are doing.

[4] The only other contention possible on the part of appellants is that because they procured from Leblanc and De Croisset the exclusive right to make films depicting the story of "Arsene Lupin," and reserved the United States as their own territory, when assigning that right to London Film Company, therefore they have, independent of all copyright registration by any one, or without such registration, the right to pursue in equity those who by photoplay tell the same story within the reserved territory.

This, of course, assumes that, if De Croisset and Leblanc had never copyrighted Arsene Lupin in this country, they could have brought such an action as this. Whatever might have been possible without seeking copyright protection, it is pleaded that these authors did take out copyright in 1909, and that extinguished their so-called common-law rights. Photo-Drama Co. v. Social, etc., Co., 220 Fed. 448, 137 C. C. A. 42. Therefore nothing but a copyright bill will serve, and as above stated the suit is not sustainable on that ground.

Decree affirmed, with costs.