[L. A. No. 17812.   In Bank.—Aug. 14, 1941.]

LOEW'S INCORPORATED (a Corporation) et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Loeb & Loeb and Herman F. Selvin for Petitioners.

J. H. O'Connor, County Counsel, Douglas DeCoster, Deputy County Counsel, and Harold A. Fendler for Respondent.

SHENK, J.—The petitioners seek to prohibit the respondent superior court from entertaining jurisdiction of an action brought against the petitioners and others as defendants to recover damages for alleged misappropriation of a literary and dramatic work claimed to be the exclusive property of one Al Rosen. In the complaint in the pending action, the plaintiff, Al Rosen, alleged that he is the owner by assignment of a common law copyright in an unpublished dramatic composition and motion picture scenario entitled ''The Mad Dog of Europe''; that in 1933 the work was submitted by him to the defendants, petitioners herein, and that it was rejected by them; that in 1939, without his knowledge or consent, the defendants appropriated the dramatic composition and in 1940 presented the same in a motion picture entitled ''The Mortal Storm.'' He also alleged the immediate giving of notice to the defendants of the alleged misappropriation. He sought damages in the sum of $575,000.

Loew's Incorporated and Louis B. Mayer, two of the defendants in said action, and who are the petitioners herein, answered the complaint denying any misappropriation and alleging that the scenario, ''The Mortal Storm,'' was based upon a novel of the same title written by Phyllis Bottome, also named as a defendant in the action. The answering defendants also alleged and presented a certificate showing that in December, 1933, one copy of the composition ''The Mad Dog of Europe,'' not reproduced for sale, was entered in the office of the Register of Copyrights in the Library of Congress at Washington, D. C., under the copyright act of March 4, 1909, as amended by the act of March 2, 1913,

and that registration of a claim to copyright for the first term of twenty-eight years was duly made in the name of Al Rosen. The same defendants moved the superior court to dismiss the action on the ground that exclusive jurisdiction thereof was vested in the federal courts under the provisions of the copyright law. The court denied the motion. The present proceeding was commenced to prohibit the trial of the action.

The petitioners now likewise contend that exclusive jurisdiction of all matters arising under the copyright law is vested in the federal courts, and that the subject matter of the pending action is one in which the federal courts have such exclusive jurisdiction. The respondents assert that the plaintiff in the action is relying on a common law copyright which has been expressly reserved by the copyright act.

There is no doubt that apart from statute the law recognizes certain rights of property in the original intellectual products of an author, which are entitled to the same protection as rights in any other species of property; that the author has the right of first publication and that such right is transferable. (*Wheaton* v. *Peters,* 33 U. S. (8 Pet.) 591 [8 L. Ed. 1055]; *Parton* v. *Prang,* 3 Cliff. 537 [Fed. Cas. No. 10,784]; *Holmes* v. *Hurst,* 174 U. S. 82, 84 [19 Sup. Ct. 606, 43 L. Ed. 904]; *Bobbs-Merrill Co.* v. *Straus,* 210 U. S. 339, 346 [28 Sup. Ct. 722, 52 L. Ed. 1086]; *Palmer* v. *De Witt,* 47 N. Y. 532 [7 Am. Rep. 480].) But under that law publication by the author is a dedication to the public and the author no longer has an exclusive right of property in the work. (*Wheaton* v. *Peters, supra; Palmer* v. *De Witt, supra; Holmes* v. *Hurst, supra; Caliga* v. *Inter-Ocean Newspaper Co.,* 215 U. S. 182 [30 Sup. Ct. 38, 54 L. Ed. 150]; *Fashion Originators Guild* v. *Federal Trade Commission,* 114 Fed. (2d) 80, and cases cited at pp. 83–84.)

By section 8 of article I of the United States Constitution, Congress was given the power "To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right in their respective writings and discoveries."

The copyright law grants to any person, upon compliance with its provisions, the exclusive right to publish and vend

the copyrighted work (17 U. S. C. A., sec. 1 (a) ), and to perform or represent the copyrighted work publicly, if it be a drama, in any manner or by any method. (17 U. S. C. A., sec. 1 (b).) Any person entitled to copyright may secure the same for his work by publication thereof with the notice required affixed to each copy published (sec. 9), and by depositing two copies with the register of copyrights (sec. 12). Section 11 provides that the copyright of a dramatic work, of which copies are not reproduced for sale, may be obtained by the deposit with the claim of copyright of one complete copy, but that the privilege does not exempt the author from deposit of copies pursuant to section 12 when the work is later reproduced in copies for sale. The copyright thus secured continues for 28 years ''from date of first publication'' with the right of one renewal for a further term of twenty-eight years. (Section 23.) The limitation of time has been held to apply to a copyright obtained for exclusive representation of an unpublished dramatic composition pursuant to the provisions of section 11, the period commencing from the date of deposit. (*Cardinal Film Corp.* v. *Beck,* 248 Fed. 368; *Marx* v. *United States,* 96 Fed. (2d) 204.)

Section 25 provides the remedies for infringement of copyright under the statute by injunction and by action for damages. That section limits the damages to a maximum sum of $5000 and a minimum of $250 and provides that the sum allowed shall not be regarded as a penalty; except that the limitations do not apply to infringements occurring after notice. (*Turner & Dahnken* v. *Crowley,* 252 Fed. 749 [164 C. C. A. 589].)

By section 34 jurisdiction of all actions or proceedings arising under the copyright laws of the United States is vested in the federal courts. Section 2 provides: ''Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor.''

It is asserted by the respondent that Rosen's common law right of redress against the infringement of his right of exclusive representation of the dramatic work existed because the dramatic composition remained unpublished, and that deposit pursuant to section 11 of the copyright act did not

amount to such publication as at common law is considered a dedication to the public.

It is not contended that Rosen did not effect a valid statutory right, namely, the right to exclusive performance and representation dramatically of the composition on deposit with the register. The question is whether a statutory and a common law right, such as is here claimed, can exist concurrently. It is not questioned that the author or the assignee, Rosen, has the right of first publication of the dramatic composition, but Rosen is not suing for infringement of that right. The right which is the subject matter of the pending action is the claimed right to exclusive representation of the dramatic work for profit, which is the subject of the copyright held by Rosen.

█ In the case of a literary work, there is no right which can be protected under the statute until first publication. Upon first publication the right of exclusive property, that is, the right to multiply copies for a limited period, is that afforded by the statute. In the case of an unpublished dramatic composition the statutory right to exclusive performance or representation exists for a limited period. The duration of the right, apart from statute, of exclusive representation by the author of an unpublished dramatic work is not entirely clear. It has been said that it is not lost by public performance. (*Ferris* v. *Frohman,* 223 U. S. 424 [32 Sup. Ct. 263, 56 L. Ed. 492]; *Nutt* v. *National Institute Inc.,* 31 Fed. (2d) 236, 238.) It has also been stated that by a public performance or a publication of the work with the author's consent, the author's common law right to exclusive performance is lost. (*Palmer* v. *De Witt,* 47 N. Y. 532, 542 [7 Am. Rep. 480]; *Keene* v. *Wheatley,* 14 Fed. Cas. 180, 201, case No. 7644. See, also, Civil Code, sec. 983.) Compliance with the statute to secure exclusive performance serves as constructive notice of the exclusive right and affords *prima facie* evidence of the facts stated in the certificate of registration (*Nutt* v. *National Institute Inc.,* 31 Fed. (2d) 236), and therefore of the originality and innocence of the composition. The existence concurrently of the common law and the statutory copyright, as is here claimed, would permit the owner of the statutory right of exclusive representation to seek the advantages of the statute and at the same time to

reject its disadvantages. It would give him something in addition to the statutory right and an advantage which is not afforded to other copyright holders. The respondents' contention appears to be that the proprietor of the statutory right to represent an unpublished drama may seek redress in the state courts as a perpetual right, while the proprietor of a similar right who also had obtained copyright for the publication of his composition, would be restricted to the statutory redress in the federal courts and for the limited period prescribed.

The rights of one who proceeds under the statute should thenceforth be measured by the provisions of the statute. The common law right exists until the statute has been invoked and rights created thereunder, or the common law right has otherwise been abandoned; and this is so in one case as in the other. The author has the right of election, that is, he may content himself with his common law copyright, or he may elect to substitute therefor the right afforded by the statute by complying with its provisions, whereupon the extent of his copyright and the remedies for infringement are governed by the statutory provisions. Rosen's election was made when he proceeded to secure protection of the dramatic rights in the composition under the copyright statute. He cannot make a different election now. There is no expression in any of the authorities that a common law and a statutory right may exist concurrently, as is here claimed. The contrary conclusion is indicated. ''No proposition is better settled than that a statutory copyright operates to divest a party of the common law right.'' (*Jewelers' Mercantile Agency* v. *Jewelers' Weekly Publishing Co.*, 155 N. Y. 241, 247 [49 N. E. 872, 63 Am. St. Rep. 666, 41 L. R. A. 846]; *Bobbs-Merrill Co.* v. *Straus*, 147 Fed. 15 [77 C. C. A. 607, 15 L. R. A. (N. S.) 766]; *Societe des Films Menchen* v. *Vitagraph Co.*, 251 Fed. 258, 260 [163 C. C. A. 414]; *Universal Film Mfg. Co.* v. *Copperman*, 218 Fed. 577 [134 C. C. A. 305]; *Cohan* v. *Robbins Music Corp.*, 244 App. Div. 697 [280 N. Y. Supp. 571], and cases cited.) The foregoing proposition appears to have found frequent expression in the decisions. It may be said that it is the outgrowth of cases involving publication of literary works, and for the most part has been applied in such cases. However, counsel has not presented nor have we discovered a case

involving any copyright under the statute in which a different conclusion has been announced. In *Nutt* v. *National Institute Inc., supra,* p. 238, it was said, referring to section 2 of the copyright statute, that the statute did not change the common law. In *Photo-Drama Motion Picture Co., Inc.,* v. *Social Uplift Film Corp.,* 220 Fed. 448, 450 [137 C. C. A. 42], the court through Lacombe, Circuit Judge, said: "We do not concur in Judge Hand's holding [213 Fed. 374] that one who has obtained statutory copyright of a book or play has left in him any common-law right in literary property by virtue of section 2 of the act. We think that section is intended only to indicate that the statute does not displace the common-law right. Whoever elects to avail himself of the statute, however, must be held to have abandoned his common-law right." The right to multiply copies has been termed the "special creation of the statute." (*Bobbs-Merrill Co.* v. *Straus,* 210 U. S. 339, 351 [28 Sup. Ct. 722, 52 L. Ed. 1086]; see also *Caliga* v. *Inter Ocean Newspaper,* 215 U. S. 182, 188 [30 Sup. Ct. 38, 54 L. Ed. 150].) The statute provides the system of remedies and no others can be resorted to. (*Globe Newspaper Co.* v. *Walker,* 210 U. S. 356, 367 [28 Sup. Ct. 726, 52 L. Ed. 1096].) Rosen has become the owner of a special right created by statute, that is, the right to the exclusive representation for profit of the dramatic composition deposited with the register. Therefore, he likewise, must be restricted to the remedies provided for the infringement of that right. Under this view of the matter, the question whether the deposit of the dramatic composition with the register amounts to publication becomes unimportant.

None of the cases relied on by the respondents involved a claim of the concurrent existence of common law and statutory copyright to protect the exercise of the same right. In *Palmer* v. *DeWitt, supra,* the action was brought to restrain the defendant from printing an uncopyrighted and unpublished manuscript drama. The court held that whatever rights the plaintiff had, existed at common law, and that the state court was the proper forum for the redress of any infringement of those rights. It was pointed out in that case that "the right publicly to represent a dramatic composition for profit, and the right to print and publish the same composition to the exclusion of others, are entirely dis-

tinct, and the one may exist without the other. . . . The rights of an author of a drama in his composition are two-fold. He is entitled to the profit arising from its performance, and also from the sale of the manuscript, or the printing and publishing it.'' That distinction is impliedly recognized by the provisions of section 11 of the copyright law. In the present case we may assume that the author or his assignee still has the common law right of first publication, redress for the infringement of which it is also assumed may be sought in the state courts. To support the contention that Rosen still has the common law right of exclusive performance, the respondent relies on certain language in the case of *Fashion Originators Guild* v. *Federal Trade Commission,* 114 Fed. (2d) 80, 83, where it was said: ''It certainly would be a strangely perverse anomaly that turned the grant of statutory copyright into a detriment to the 'author'; yet it would be hard to prove that the statutory remedies conferred made up for the limitation of the monopoly.'' The case did not present a question of the concurrent existence of common law and statutory copyright in the same subject matter. The court was discussing the question of the survival of the common law right after publication and apart from statute. Its remarks were intended as a refutation of the contention that after passage of the copyright act, publication by the author without registering under the act did not destroy the common law right. It pointed out that if it did not constitute a complete exercise of the common law right in every case, an author who copyrighted his work would lose rather than gain from compliance with the statute, inasmuch as without compliance his monopoly to multiply copies would exist forever.

In *Underhill* v. *Schenck,* 193 N. Y. Supp. 745, 748, it was stated that the right of exclusive dramatic representation ''asserted by plaintiff must not be confused with any right of literary property which he might claim as an author either under the copyright statutes or at common law.'' The court in that case denied relief for a violation of the copyright by production of the play on the ground that relief must be sought in the federal courts. The case of *Berry* v. *Hoffman,* 125 Pa. Super. 261 [189 Atl. 516], recognized that section 2 of the copyright law referred to those rights existing at common law before publication, and upheld in the state forum

a claim of copyright before publication apart from the statute. The case did not involve any statutory copyright. The case of *Caruthers* v. *R. K. O. Radio Pictures,* 20 Fed. Supp. 906, was commenced in the state court and was transferred to the federal court because of diversity of citizenship. It involved only the common law right. It was not shown that the work had either been published or copyrighted under the statute.

■ In the present case, as we have noted, the right created under section 11 of the copyright law is not assumed to have destroyed any common law right to the first publication of the dramatic composition. It did secure to the holder of the copyright the exclusive right to reproduce the play for profit for the term prescribed by the statute. The right thus secured was a substitute for the author's common law right of performance, and the plaintiff in the pending action is restricted to the remedies afforded by the statute for any infringement of that right. The only court in which he may seek such redress originally is the United States District Court, as specified by section 34 of the copyright statute.

Let the peremptory writ of prohibition issue as prayed.

Curtis, J., Edmonds, J., Carter, J., Traynor, J., White, J., *pro tem.,* and Pullen, J., *pro tem.,* concurred.