## FAULKNER et al. v. EMPIRE STATE NAIL CO.

(Circuit Court of Appeals, Second Circuit. April 16, 1895.)

### No. 46.

PATENTS—EQUITABLE ASSIGNMENT — BONA FIDE PURCHASER OF LEGAL TITLE.
    One who has purchased an equitable interest in an invention cannot justify the manufacture and sale of the patented article, as against a

bona fide purchaser of the legal title to the patent, who found no recorded assignment of it, and who was chargeable with no notice of any outstanding claim thereto, or as against subsequent purchasers from the latter, even if such purchasers had notice. 55 Fed. 819, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit by the Empire State Nail Company against Edward H. Faulkner, Edward D. Faulkner, and Francis E. Faulkner for alleged infringement of a patent relating to furniture nails. The circuit court rendered a decree in favor of the complainant. 55 Fed. 819. Defendants appeal.

Walter B. Vincent and George B. Ashley, for appellants.
Alan D. Kenyon, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The suit was brought upon letters patent No. 370,614, granted September 17, 1887, on application filed November 2, 1881, to Thomas F. N. Finch, assignor, for an "improvement in furniture nails." There is no question as to the validity of the patent or its infringement. Defendants contend that the American Solid Leather Button Company, which manufactured the nails they sold, had the right to use the invention by reason of certain transactions between that company and one Latimer B. M. Finch.

The complainant's chain of title is as follows:

(1) Thomas F. N. Finch (the inventor and patentee) to J. W. McCrillis, assignment dated February 12, 1882, recorded May 1, 1882.

(2) J. W. McCrillis to Samuel D. Church and Latimer B. M. Finch, assignment dated 1884, recorded October 3, 1887.

(3) Samuel D. Church and L. B. M. Finch to Thomas F. N. Finch, assignment dated July 16, 1886, recorded October 3, 1887.

(4) T. F. N. Finch to Finch Manufacturing Company, assignment dated December 21, 1886, recorded October 3, 1887.

(5) Finch Manufacturing Company to Thomas V. Johnson, assignment dated November 1, 1888, recorded November 16, 1888.

(6) Thomas V. Johnson to Empire State Nail Company, assignment dated November 2, 1888, recorded November 26, 1888.

The defendants contended that the American Company acquired an equitable title to the invention described in said letters patent by purchase from the inventor and Latimer Finch; that such purchase was made in the year 1881, before the patent was applied for; and that, if such purchase did not pass title in 1881, the American Company at least obtained title to one-half of the invention, and of the subsequent patent, when, under the assignment of McCrillis, Latimer Finch obtained the same. No assignment to the American Company was recorded. The circuit court held that the American Company did become the owner of an equitable interest in the patent; and without entering into any discussion of the evidence bearing upon that branch of the case, or deciding the questions thereby presented, it may be assumed for the purposes of this appeal that the American Company did, in 1884, or earlier, become the equitable owner either of the whole patent or of an undivided interest therein.

The only question remaining in the case is whether the manufacture and sale of infringing articles can be justified by the assertion of such equitable title against a bona fide purchaser of the legal title, who found no recorded assignment of it, and neither had nor was chargeable with notice of any claim thereto.

In May, 1886, William M. Cavanaugh started with Latimer Finch, in the city of New York, in the business of manufacturing leather nails and buttons. The application for the patent was then pending in the patent office, and he made a contract in writing with Thomas Finch, through Latimer, as his duly-accredited agent, for the purchase of the patent when issued, the equipment and prosecution of the business, and the incorporation of a company to be organized for that purpose. He subsequently organized the Finch Manufacturing Company, to which Thomas Finch, on December 21, 1886, assigned all his right, title, and interest in and to the invention and the letters patent to be obtained therefor. Cavanaugh and one Marcus, who was associated with him in getting up the company, invested some $4,000 in the venture, and gave to Thomas Finch shares of the stock as consideration for the assignment. Cavanaugh testified that, at the time the patent was purchased and transferred to the Finch Manufacturing Company, he had no knowledge or notice that the title to it was claimed by any one other than Finch. Unless there is found elsewhere in the proof something tending to discredit this statement, it must be held that a legal title, good against any outstanding equitable claim, passed to the Finch Manufacturing Company.

Defendants rely upon a letter received by Cavanaugh on June 4, 1886. It reads as follows:

"Providence, R. I., June 3, 1886.

"Mr. Wm. M. Cavanaugh, No. 161 Franklin St., New York—Dear Sir: Your attention is invited to the inclosed papers, as somewhat indicating the character of the man we understand you have connected yourself in the manufacture of goods infringing our legal rights and patents. We hereby formally notify you that, if you persist in this, we shall not only hold you rigidly accountable in the courts for all violation of our patents, trade-marks, labels, and numbers, but you will probably in the end lose every dollar you put into the enterprise, as has been the case with those who have aided this man's former efforts; the Standard Leather Button Company, of N. Y., and the Empire Mfg. Co., of this city, both being sold out by the sheriff after a brief and discreditable career. Having now been duly warned, it will be your own fault if you follow in the footsteps of so many who have come to grief in this direction.

"Respy., yours,                    American Solid Leather Button Company,
                                                  "Chas. E. Bailey, Pres."

Precisely what papers were inclosed in this letter is not shown by direct proof, but the evidence warrants the inference that there were none other than these:

First. A copy of a decree of the supreme court of Rhode Island entered July 6, 1885, in the suit of American Solid Leather Button Co. v. Latimer B. M. Finch, which adjudged that:

"Defendant [Finch] was bound by his agreement dated February 1, 1881, in the pleadings mentioned, and the complainant is entitled to insist upon and enforce the same against him, and that said defendant be," etc., "enjoined from disclosing or divulging any information, knowledge, secret combination,

or other thing whatsoever pertaining to or connected with the business of manufacturing the solid leather nails or solid leather buttons in said agreement mentioned, and from making, vending, or using, by himself, his servants or agents, any solid leather nails or buttons in said agreement mentioned, except under the directions and employment of the complainant, and from violating in any manner the terms and provisions of said agreement in the pleadings mentioned."

The record shows that the decree, as originally drawn, contained a further clause enjoining defendant, Finch, from "selling, transferring, assigning, or in any manner disposing of his interest in or control over any invention or patent right which said defendant has or which he may hereafter acquire, relating to solid leather buttons or nails, except to the complainant," which clause was struck out before entry, and became no part of the decree.

Second. One or more circulars, under different dates, stating that Latimer Finch, a former employé of the American Solid Leather Button Company, was making and putting on the market spurious imitations of its standard solid leather nails and buttons.

At the time this letter and inclosure were sent to Cavanaugh, the American Solid Leather Button Company owned another patent for a compressed leather head nail, No. 248,269, issued to Bailey & Talbot, October 18, 1881, and with which the application of Thomas Finch for the patent in suit, which was filed November 2, 1881, had been and still was in interference.

In reply to this notice of June 3, 1886, Cavanaugh sent the following, which was duly received.

"New York, June 4, 1886.

"American Solid Leather Button Co., Providence, R. I.—Gentlemen: I am just in receipt of yours of 3d inst. Replying to same, beg to say I have not the slightest wish to trespass on any rights that you may have, and, that I may not, I should be glad to have you inform me: (1) To what you have a patent? (2) Has your patent ever been litigated, and, if so, was the decision for or against you? Your answer to these two questions will enable me to act in reference to that part of your letter wherein you threaten to sue me for any infringements on your rights. If I am informed what your rights are, I can probably avoid interfering with them.

"Very respectfully, Wm. M. Cavanaugh."

This letter of Cavanaugh's was not replied to by the American Company.

Other than this correspondence there is no evidence tending to show notice to Cavanaugh, who bought from Thomas Finch for the Finch Manufacturing Company, of any outside claim to the invention and the patent applied for by Thomas Finch.

The claim now made by defendants, viz. that the American Company had some right to or interest in the invention of Thomas Finch, and in the patent therefor, if any should be issued, is one which could have been so plainly and easily stated in a single brief sentence that it is impossible to conceive that men of the most ordinary intelligence could have intended the letter of June 31, 1886, and its inclosures, as notice of such claim. If they did intend them as such notice, they wholly failed to express that intention. Neither the letter nor the decree nor the circulars in any way indicated that the American Company had or claimed to have any interest in the

Finch application, which that company was trying to defeat under the interference with the Bailey & Talbot patent of 1881, which it owned. The Finch Manufacturing Company then became a bona fide owner of the patent in suit, without notice of any prior outstanding equitable interest, and the title it thus obtained is good as against such equity in the hands of subsequent purchasers, even if they had notice. Rogers v. Lindsey, 13 How. 441, 446. It is unnecessary, therefore, to discuss the subsequent assignments by which the legal title to the Finch patent passed to complainant.

The decree of the circuit court is affirmed, with costs.