PHOTO DRAMA MOTION PICTURE CO., Inc., v. SOCIAL UPLIFT FILM CORPORATION.

(District Court, S. D. New York. February 10, 1914.)

1. COURTS (§ 299*)—JURISDICTION OF FEDERAL COURTS—COPYRIGHT SUITS.
    Allegations in a bill that complainant is the owner of a statutory copyright and that it has been infringed by defendant are sufficient to give a federal District Court jurisdiction of the suit.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 841; Dec. Dig. § 299.*]

2. INJUNCTION (§ 152*) — MOTION FOR PRELIMINARY INJUNCTION — PRESUMPTIONS OF FACT.
    On motion for a preliminary injunction, all disputed or doubtful questions of fact must be resolved against complainant.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 337, 343; Dec. Dig. § 152.*]

3. COPYRIGHTS (§ 46*)—ASSIGNMENT—RECORDING.
    The author of a book assigned his right of copyright, and after it had been copyrighted by the assignee the dramatic and motion picture rights therein were reassigned to him. He afterward executed a paper which recited that the other party "secures the exclusive dramatic rights, including moving picture rights," and also the "exclusive leasing" of the play. It also provided that it should be binding on the heirs, executors, and assigns of the parties. Held, that the paper was clearly intended as an assignment of all the author's dramatic rights, but that it was void as against a subsequent purchaser of any of such rights without notice, where it was not recorded in the copyright office within three months, as required by Copyright Act March 4, 1909, c. 320, § 44, 35 Stat. 1084 (U. S. Comp. St. Supp. 1911, p. 1485).
    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 44; Dec. Dig. § 46.*]

4. COPYRIGHTS (§ 46*)—BOOK—ASSIGNMENT OF MOTION PICTURE RIGHTS—NOTICE OF PRIOR UNRECORDED ASSIGNMENT.
    Since the amendment of the copyright statute by Act Aug. 24, 1912, c. 356, 37 Stat. 488, under which a copyright on a drama proper and one on a moving picture play may be separately secured, the owner of the dramatic and motion picture rights in a copyrighted book may sell and assign the two separately, and notice to the purchaser of the motion

picture rights alone that his assignor had sold the dramatic rights did not charge him with notice of an unrecorded assignment covering also the motion picture rights.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 44; Dec. Dig. § 46.*]

5. COURTS (§ 493*)—CONFLICTING JURISDICTION—STATE AND FEDERAL COURTS—COPYRIGHTS.

The jurisdiction of a federal court to enjoin infringement of a statutory copyright, which under the statute is exclusive, is not affected by the pendency in a state court of a cross-suit between the same parties involving a claimed common-law copyright relating to the same subject-matter.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1352; Dec. Dig. § 493.*]

In Equity. Suit by the Photo Drama Motion Picture Company, Incorporated, against the Social Uplift Film Corporation. Application for an injunction pendente lite granted.

Reginald Wright Kauffman, author of the "House of Bondage," prior to publication assigned his right of copyright to the Moffatt, Yard & Co. The Moffatt, Yard & Co. duly copyrighted the book and thereafter reassigned to the author the dramatic and motion picture rights. On July 12, 1913, by letter, the author granted to one Joseph Byron Totten, rights, etc. See letter following:

"July 12th, 1913.

"Mr. Joseph Byron Totten—Dear Mr. Totten: With the slight corrections that we have made to it, I am very much pleased with your dramatic version of the 'House of Bondage,' and this note is by the way of being an O. K. for it. Upon your assurance that Mr. Rumsey tells you that the understanding with Anite Scott is null and void, I am glad to confirm the contract that you sent me while I was in Paris, and, on the assumption that the Scott understanding is indeed null and void, I write you now to so confirm it. The contract has been sent to America. I shall write for it at once and immediately sign it. Meanwhile, this is to serve as your authority to the effect that you have the right to make a play of the 'House of Bondage' and to mark it under the terms of the contract above referred to.

"Very truly yours, [Signed] Reginald Wright Kauffman."

No other instrument in writing was executed between the author and Mr. Totten. Thereafter on the 4th day of December, 1913, Mr. Kauffman made and executed an assignment in writing over the motion picture rights to the complainant motion picture company, which was thereafter duly filed by the complainant in the office of the register of copyrights in the library of Congress. The affidavits show that, at the time Mr. Kauffman assigned the motion picture rights to the complainant, he stated that he had already assigned the dramatic rights to Mr. Totten. It appears that Mr. Totten assigned whatever rights he possessed to the defendant Social Uplift Film Corporation. Mr. Totten never filed any assignment or claim of assignment in the office of the register of copyrights. This suit is brought by the complainant to enjoin the defendant from making any motion picture photo play based upon the book of "House of Bondage."

Archibald Ewing Stevenson, of New York City, for complainant. John J. Curtin, of New York City, for defendant.

HAND, District Judge. [1, 2] The jurisdiction of this court is beyond question, being dependent only upon the allegations in the bill that the plaintiff is the owner of a statutory copyright and that that copyright has been infringed. The case must therefore stand or fall on the merits. Both sides concede that Kauffman had by assign-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment the statutory dramatic rights and the moving picture rights, since each necessarily traces its title to him. Since this is a motion for a preliminary injunction, all disputed facts must be resolved against the plaintiff, and I must therefore assume that the condition in the letter of July 12, 1913, had been fulfilled. This is perfectly consistent with the decision of Mr. Justice Seabury and for precisely the same reason. If there be doubt about that fact, any court will take it against the moving party upon motion for preliminary injunction. I must also assume that the agreement, incorporated by reference in the letter, was in fact in its present form when Kauffman accepted it. I shall take it that this contract became the measure of the rights assigned to Totten.

The relevant questions then become three: Did the contract convey moving picture rights? Was it such an assignment as required registration under section 44? Was Kingsley's prior knowledge that Kauffman had assigned the dramatic rights equivalent to knowledge that he had assigned moving picture rights? That these are the only relevant questions appears upon reflection. Kauffman had only a statutory copyright in the right to dramatize. This necessarily follows from the fact that the book had been itself copyrighted, which involves a publication and the loss of all common-law rights. Indeed, he avers as much in the fifth and sixth articles of his complaint in the state court. When Totten used those rights to make a drama or a dramatic composition, it may be that he got common-law rights in the resulting drama, and that the plaintiff here will infringe those rights; but that is another question, quite separate from whether Totten got anything but statutory rights. In short, it may well be that Totten could enjoin Kingsley for infringing his common-law dramatic rights by a moving picture show, while Kingsley could enjoin Totten from presenting any moving picture show at all.

Totten's rights to dramatize or to make moving pictures being statutory was within section 44, if the letter and contract of July 12, 1913, were an assignment for lack of registration, unless Kingsley had notice, before he paid the consideration, for any subsequent notice is of no consequence.

I shall assume for this motion that Totten's contract covered moving picture rights, without meaning finally to decide that question. There remain, then, only the question of whether the contract was within section 44, and whether Kingsley's notice was enough to put him out of the position of a bona fide purchaser.

[3] The word "assignment" does not, it is true, appear in the instrument on which the defendant relies, but the recital uses this phrase, "the party of the first part secures the exclusive dramatic rights including moving pictures rights," and the phrase of transfer is, "the party of the first part has the exclusive leasing of the play." Finally, the contract is not to become void in case of Kauffman's or Totten's death, but is to be carried out by their "heirs, executors or assigns."

I cannot think that there is any doubt of the intention of this language to create an assignment of all the dramatic rights which Kauff-

man had. The test is whether anything remained in him. I can see nothing which could remain after the use of the words, "exclusive leasing," except the right personally to perform any drama which might be made from the book, or the right personally to present in moving pictures any scenario. The word "leasing," however, is to be interpreted in connection with the recital which is in more general form. Moreover, the intent is to be gathered somewhat from the relative situation of the parties, one an author and the other a dramatic promoter. It would be absurd to suppose that Kauffman meant to retain the right to compete, certainly as regards moving pictures.

However, it is really not necessary to consider whether or not this is a license or an assignment, because a license falls before an assignment taken in good faith anyway. It would be absurd to protect a subsequent purchaser against a prior unrecorded assignee and leave him open to prior unrecorded licenses which should defeat him. Gates Iron Works v. Fraser, 153 U. S. 332, 348, 14 Sup. Ct. 883, 38 L. Ed. 734; Faulkner v. Empire State Nail Co., 67 Fed. 913, 15 C. C. A. 69 (C. C. A. 2d Cir.).

[4] The sole question remaining is of Kingsley's notice. If notice of dramatic rights necessarily includes notice of moving picture rights, then he had notice of Totten's rights; but I think since the amendments of August 24, 1912, 37 Stat. 488, c. 356, that they do not. It was undoubtedly held in Kalem Co. v. Harper Bros., 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285, that the owner of dramatic rights might forbid their dramatic representation by moving pictures, and to the present time the only right to protect moving pictures arises from the words "dramatic" or "drama."

Thus, the statutory right to protect against the making of a moving picture scenario from a book still arises from section 1, subd. "b," and the statutory right to protect against infringement of the scenario arises from section 1, subd. "d." Yet the proceedings for registration of the moving picture play are now specifically controlled by sections 5 and 11 of the amendment of 1912, and it appears that it is one thing to secure the copyright upon a drama proper and another to secure it on a moving picture play.

A man having general statutory dramatic rights like Kauffman might make a play and perform it under his common-law rights without publication, or he might copyright the play, and he would still not have copyrighted or published his moving picture rights. If he wrote such a scenario and made his film, he could get a separate copyright upon that. Of course, he could sell his statutory or common-law copyright of the play and keep the moving picture copyright, or he could sell each.

It seems to me clear that, if he could do this, he could sell separately the right to dramatize and the right to make a moving picture play, dividing his statutory dramatizing rights, and thus giving each assignee the right when he had exercised those rights to get his own copyright for a drama, or for a moving picture show.

Hence, when Kauffman told Kingsley that he had sold his dramatic rights at the moment while he was selling his moving picture

rights, he told him something which it was perfectly legal and natural for him to do. Kingsley was not called upon to assume that Kauffman was a knave and was then stealing his money; nor, indeed, is that yet proved. Kingsley need have found nothing suspicious in the transaction and got a good title, although it was subject to defeat by registration of the prior assignment before January 12, 1913.

[5] Therefore the plaintiff's title is unquestioned, and a temporary injunction should pass. It is said, however, that I should do nothing till the state court has acted. There is absolutely no reason to apply here the doctrine of Zimmerman v. So. Relle, 80 Fed. 417, 25 C. C. A. 518. This suit is for relief which no state court could give—an injunction under a statutory copyright. All that is open to the state court in the other suit is to enjoin an infringement of Totten's common-law copyright, if any, arising from his drama, which was itself produced under his statutory assignment of the dramatizing rights arising under section 1b. If the plaintiff's proposed moving picture show was borrowed from Totten's drama, he may get an injunction under his common-law copyright, if he has any, since the public performance of a drama is not a publication (Boucicault v. Fox, 5 Blatch. 87, 96, Fed. Cas. No. 1,691), and even though the moving picture play was itself made under valid statutory moving picture rights conveyed to Kingsley, because, though Kingsley got thereby the right to make a moving picture play from the book, he got no right in making it to copy Totten's play, if in fact he did so. As I have before suggested, there is nothing legally impossible in enjoining the plaintiff because it has copied Totten's drama, and the defendant because it is making a moving picture play. If it be suggested that the state court might go further and grant an injunction against the plaintiff here upon the theory that any moving picture play which it might perform infringed Totten's rights arising from a conveyance of Kauffman's statutory moving picture rights. I will not consider it, because that would be to assume jurisdiction to enjoin the infringement of a statutory copyright, which, of course, no state court would do. Even if that were possible, it would not, however, relieve me of the duty of protecting the plaintiff's copyright here when the jurisdiction of this court was involved, though the same facts might be involved in each suit.

Let an injunction go pendente lite forbidding the defendant from performing or advertising that it will perform any moving picture play based upon the book in question.